NO. 06-582C
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

H & R SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

Of Counsel:
MAJOR PATRICK L. GARY
U.S. Army Litigation Division
901 North Stuart Street, Suite 400
Arlington, VA 22203

JOE ALFORD
Attorney-Advisor
Office of the Staff Judge Advocate
Taylor Hall (Building 462)
Fort Sill, OK 73503

December 19, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . iii

STATEMENT OF THE ISSUES . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . 3

STATEMENT OF MATERIAL FACTS . . . . . . . . . . 3

A. Introduction . . . . . . . . . . 3

B. The Contract's Supply Requirements . . . . . . . . . . 4

C. The Contract's Service Requirements . . . . . . . . . . 6

D. Increase In Base Usage . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . 8

I. Summary Judgment Standards . . . . . . . . . . 8

II. H & R's Claims Are Meritless . . . . . . . . . . 9

A. The Plain Language Of The Parties' Contract Is Unambiguous . . . . . . . . 9

B. The First Count Of H&R's Complaint Is Meritless . . . . . . . . . . 10

1. Introduction . . . . . . . . . . 10

2. The Army Did Not Breach An Implied Specification Warranty . 11

3. The Government Did Not Possess Superior Knowledge . . . . . . . 12

4. The Government Did Not Misrepresent Estimates . . . . . . . . . . . 14

5. The Government Did Not Breach Its Duty To Cooperate . . . . . . 17

C. H & R's Constructive Change Count Is Baseless . . . . . . . . . . 18

D. H & R's Implied Contract Count Is Unsupported . . . . . . . . . . . . . . . . . . 19

E. H & R's Equitable Estoppel Count Is Meritless . . . . . . . . . . . . . . . . . . . 20

F. H & R's Mutual Mistake Count Is Meritless . . . . . . . . . . . . . . . . . . . . . . 21

G. H & R's Second Claim Is At Least Partially Unsupported . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

### CASES

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . 18

AT&T Communications, Inc. v. Perry,
296 F.3d 1307 (Fed. Cir. 2002) . . . . . . . . . . 13

American Airlines, Inc. v. United States,
204 F.3d 1103 (Fed. Cir. 2000) . . . . . . . . . . 8

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 8

Atlas Corp. v. United States,
895 F.2d 745 (Fed. Cir. 1990) . . . . . . . . . . 20, 22

Aydin Corp. v. Widnall,
61 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . 19

Blake Construction Co., Inc. v. United States,
987 F.2d 743 (Fed. Cir. 1993) . . . . . . . . . . 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 8

Coast Fed. Bank, FSB v. United States,
323 F.3d 1035 (Fed. Cir. 2003) . . . . . . . . . . 9

Dairyland Power Co-op. v. United States,
16 F.3d 1197 (Fed. Cir. 1994) . . . . . . . . . . 22

Dakota Tribal Indus. v. United States,
34 Fed. Cl. 593 (1995) . . . . . . . . . . 21

Dalton v. Cessna Aircraft Co.,
98 F.3d 1298 (Fed. Cir. 1996) . . . . . . . . . . 9

Ets-Hokin Corp. v. United States,
420 F.2d 716 (Ct. Cl. 1970) . . . . . . . . . . 19

Gant v. United States,
417 F.3d 1328 (Fed. Cir. 2005) . . . . . . . . . . 8

Giesler v. United States,
232 F.3d 864 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Gregory v. United States,
37 Fed. Cl. 388 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Heckler v. Cmty. Health Servs.,
467 U.S. 51 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ITT Arctic Services, Inc. v. United States,
524 F.2d 680 (Ct. Cl. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

J.L. Simmons Co. v. United States,
412 F.2d 1360 (Ct. Cl. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Liebherr Crane Corp. v. United States,
810 F.2d 1153 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Long Island Savings Bank, FSB v. United States,
476 F.3d 917 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

M.A. Mortenson Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McAbee Const. Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

National Australia Bank v. United States,
452 F.3d 1321 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Orlosky Inc. v. United States,
68 Fed. Cl. 296 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

PCL Construction Services, Inc., v. United States,
47 Fed. Cl. 745 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Processed Plastics Co. v. United States,
473 F.3d 1164 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Propellex Corp. v. Brownlee,
342 F.3d 1335 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Renda Marine Inc. v. United States,
66 Fed. Cl. 639, 648 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Service Technicians, Inc. v. United States,
37 Fed. Cl. 383 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Stuyvesant Dredging Co. v. United States,
834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Sylvania Elec. Prods., Prods., Inc. v. United States,
458 F.2d 994 (Ct. Cl. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

T. Brown Constructors, Inc. v. Pena,
132 F.3d 724 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tecom, Inc. v. United States,
66 Fed. Cl. 736, 771 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United Pacific Ins. Co. v. Roche,
401 F.3d 1362 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Spearin,
248 U.S. 132 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

Varilease Technology Group, Inc. v. United States,
289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Womack v. United States,
389 F.2d 793 (Ct. Cl. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATUTES**

41 U.S.C. § 601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**OTHER AUTHORITIES**

Cibinic & Nash, Administration of Government Contracts 297 (3rd Ed. 1995) . . . . . . . . . . . . . 18

Restatement (Second) of Contracts § 162 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Restatement (Second) of Contracts § 151 cmt. A (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| H & R SERVICES, INC.,<br>an Alabama corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-582C<br>(Judge Wheeler) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully requests that this Court enter summary judgment in defendant's favor because plaintiff H & R Services, Inc.'s ("H & R's") claims fail as a matter of contract interpretation and because no genuine issues of material fact preclude judgment for the Government. In its complaint, H & R asserts that it is entitled to be paid for costs associated with an increase in the Department of the Army's use of buildings for which it was contractually obligated to provide custodial services. Compl. ¶ 2. H & R's pay under its contract, however, was calculated based upon square footage, not upon building usage. This was a firm, fixed-price contract, and H & R bore the risk that its costs might increase over the course of performance. H & R's claims are accordingly without foundation. In support of this motion, we rely upon this brief, the attached appendix, and our proposed findings of uncontroverted fact.

**DEFENDANT'S BRIEF**

**STATEMENT OF THE ISSUES**

1. Whether H & R's claims are foreclosed by the plain language of its contract, which provided that H & R would be compensated based upon the square footage of the buildings it cleaned, not based upon the amount of supplies or services it provided.

2. Whether the Government breached an implied warranty of the accuracy and completeness of its specifications where the contract contained only performance specifications.

3. Whether H & R's superior knowledge claim can succeed where H & R knew all the vital facts affecting its performance costs, where the contract specifications were not misleading, and where the Government provided H & R with all relevant information.

4. Whether the Government misrepresented the estimates upon which H & R relied where all of the estimates provided in the contract were accurate and reasonably prepared.

5. Whether the Government breached its duty to cooperate with H & R where the Government's performance under the contract was entirely reasonable.

6. Whether H & R is entitled to recover under a constructive change theory where the Government did not require H & R to do anything beyond the terms of the contract.

7. Whether an implied contract exists between the parties where the subject matter of the alleged contract is identical to the subject matter of the parties' express contract.

8. Whether the Government can be equitably estopped where it did not engage in any affirmative misconduct.

9. Whether the contract should be reformed based upon mutual mistake where the parties were not mistaken regarding any facts in existence at the time of contract formation.

## STATEMENT OF THE CASE

This case arises pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 et seq. H & R submitted a certified claim to the contracting officer on July 5, 2005, seeking $165,851.24 in compensation for its losses on its contract. App. 479-80, 521-22.[1] The basis for H & R's claim was an alleged increase in the Army's use of the buildings for which H & R had contracted to provide custodial services, an increase that H & R claimed added to its labor and supply costs. App. 494. The contracting officer denied H & R's claim on August 11, 2005. App. 528. The contracting officer's decision found that the pricing of the parties' firm, fixed-price contract was based upon the square footage of the buildings, not upon other factors. Id. On May 12, 2006, H & R submitted another claim, for $37,359.76, to the contracting officer for a later period of contract performance. App. 530-31, 536. The contracting officer in turn denied this claim on June 20, 2006, for the same reasons she denied the first claim. App. 578-79. H & R instituted this action on August 11, 2006.

## STATEMENT OF MATERIAL FACTS

### A. Introduction

This case concerns a firm, fixed-price contract, awarded on August 22, 2000, for custodial services performed in various administrative buildings at Fort Sill, an Army base in Oklahoma. App. 1, 12. The services included, among other things, floor maintenance, trash removal, spot cleaning, dusting, vacuuming, and the supplying of toilet paper, towels, trash bags, and hand soap. App. 15-16.

The contract provided for a base period of performance lasting from October 1, 2000, to

[1] "App. ___" refers to the appendix attached to this brief.

September 30, 2001, followed by four one-year option periods. App. 45-51. Prospective bidders submitted quotations based upon the estimated square footage of buildings to be serviced. App. 1-11, 34-36, 45-51. H & R submitted the winning bid, for $1,128,810. App. 11, 67. H & R's bid reflected static or decreasing costs for each of the option periods. App. 2-11.

The Government exercised all four of the contract's options. H & R's costs, and the Government's corresponding compensation, increased over the life of the contract, for two reasons. First, the Government agreed to compensate H & R for its increased hourly labor costs during performance, pursuant to the Service Contract Act. App. 492. Second, the contract provided that the Government reserved the right to add or subtract space to be maintained. App. 15. The parties did, in fact, agree to such additions and subtractions 12 times over the course of performance. App. 75-476; see, e.g., App. 460-62.

**B. The Contract's Supply Requirements**

The contract required H & R to "furnish all materials, supplies, and vehicles necessary to comply with the requirements of the contract." App. 14. Although the contract provided an informational list of potential supplies, the contract did not specify any estimated quantities for the required supplies. See App. 14. In this respect, the contract differed from the maintenance contract preceding the H & R contract and the contract following it. Both of these contracts contained monthly supply usage estimates. App. 598; App. 609.

The contracting officer who awarded the H & R contract, Sharel McAdoo, explained during her deposition why no estimated list for supply quantities was provided in the H & R solicitation and contract. Such a list was initially included in the internal Government requirements package sent by the Directorate of Public Works, which oversaw the technical

aspects of the contract, to the Directorate of Contracting, which assembled the solicitation. See App. 582-594 (excerpts from Exhibit 17 to the deposition of Carl Reimer, who testified to providing the documents in Exhibit 17 to the contracting office, see App. 632-634). Ms. McAdoo testified that she did not remember any "specific discussion" about the list of supplies — or contract language referring to the list — being removed from the solicitation, but that she did remember that the solicitation issued for the H & R contract was intended to be more "simplified" and "streamlined," which would have led to the deletion of the list and contract language referring to the list. App. 710-14. She even pointed to a draft of the solicitation where a list of supply quantities had been crossed out by an Army employee. App. 711-12, referring to App. 620.

Though no list of supplies was included in the contract, the President of H & R, Roger Hall, testified that he used such a list in preparing H & R's bid on the contract. App. 766. Mr. Hall asserted that the Army provided him a supply list in the solicitation. Id. He was unsure about whether H & R still possessed a copy of this list, but he asserted that he was looking for it. Id. Mr. Hall could not remember having any conversations with the contracting officer, Ms. McAdoo, before submitting his company's bid. App. 767.

We do not generally contest in this motion that the amount of supplies provided monthly by H & R increased during contract performance. We do contest one portion of H & R's claim concerning supplies. In its second claim, covering the months of January, 2005, to September, 2005, H & R asserted that it spent $48,500.00 on supplies. App. 531. In support of this figure, H & R submitted supply invoices. App. 537-575. These invoices show that H & R spent $18,822.80 on supplies, a difference of $29,677.20 between the invoices and H & R's claim

amount. Id. In his deposition, Mr. Hall was unable to explain this discrepancy, though he asserted that H & R could support its claim with documents. App. 771. To date, we have received no such documentation.

**C. The Contract's Service Requirements**

The contract provided also for the frequency of the custodial tasks to be performed. App. 15. Certain base occupants, for example, received services every Friday; others received services every Tuesday and Friday. Id.

During his deposition, Mr. Hall testified about how H & R calculated its bid for the services portion of the contract. App. 768-69. Mr. Hall stated that he used an industry-wide standard in calculating the amount of time it would take his employees to clean the buildings covered by the contract. Id. This amount of time was contingent upon two factors, square footage and the "population density" of the buildings, which included both the density of people and the density of equipment in the buildings. Id. Mr. Hall stated that he first considered the groups occupying the buildings, e.g., the Red Cross, that he then made assumptions about their population density, and that he calculated his bid based upon those assumptions. Id. He stated that he did not remember asking anyone in the Government how many people were present in buildings covered by the contract before submitting his bid. Id. at 768.

**D. Increase In Base Usage**

In its complaint, H & R asserts that the number of occupants in the buildings covered by the contract "increased substantially." Compl. ¶ 2. During their depositions, the Government's witnesses essentially testified that they did not know whether this was true or not. See App. 641 (deposition of Carl Reimer, who helped to prepare the technical portion of the solicitation); App.

669 (deposition of Peter Webb, who inspected H & R's work); App. 745 (deposition of Annette Arkeketa-Rendon, the contracting officer who denied H & R's claim). H & R's former employees, in contrast, recalled increases in specific buildings associated with the Iraq war effort. App. 782-83 (deposition of Jeannette Hairston, H & R's quality control manager and first-line supervisor); App. 793 (deposition of Wilburt Monroe, H & R's manager of operations for its Fort Sill contract). For the purposes of this motion, we do not contest that the use of the buildings maintained by H & R increased over the course of the contract.

## SUMMARY OF THE ARGUMENT

H & R's bid on this contract was too low. The company failed to account properly for the risk that its costs might increase during performance, and it lost money. Because this was a firm, fixed-price contract, H & R bore the risk of that loss. The Government, which complied fully with the contract, should not be held liable for H & R's error in business judgment.

In its complaint, H & R advances eight theories of recovery: Breach of an implied warranty of the accuracy and completeness of the specifications, superior knowledge, misrepresentation, breach of the duty to cooperate, constructive change, breach of an implied contract, equitable estoppel, and mutual mistake. All of these theories depend upon an erroneous interpretation of H & R's contract. That contract provided, in unambiguous language, that H & R was to be compensated based upon the square footage of the buildings it cleaned, not upon the volume of supplies or services H & R provided. Accordingly, the Court should grant summary judgment in the Government's favor.

## ARGUMENT

### I. Summary Judgment Standards

Summary judgment is appropriate when the record shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Long Island Savings Bank, FSB v. United States, 476 F.3d 917, 925 (Fed. Cir. 2007) (citing RCFC 56(c)). A factual issue is "genuine" only if the Court could find for the party opposing summary judgment and "material" only if the issue could affect the judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mechanism of summary judgment is "designed 'to ensure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting FRCP 1). Resolving a dispute via summary judgment is appropriate in contract interpretation cases, which turn upon questions of law. Varilease Technology Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002).

The moving party bears the burden of showing that no genuine issues of material fact preclude summary judgment. Celotex Corp., 477 U.S. at 323. All justifiable inferences should be drawn in favor of the nonmovant. Anderson, 477 U.S. at 255. Nevertheless, the party opposing summary judgment must show an evidentiary conflict on the record. American Airlines, Inc. v. United States, 204 F.3d 1103, 1112 (Fed. Cir. 2000). A factually unsupported argument is insufficient to defeat a motion for summary judgment. Id. Instead, a party must offer "an evidentiary conflict created on the record at least by a counter statement of fact or facts set forth in detail." Processed Plastics Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006). Moreover, the Court should not accept conclusory legal conclusions couched as allegations of fact. See Gant v. United States, 417 F.3d 1328, 1331 (Fed. Cir. 2005).

## II. H & R's Claims Are Meritless

### A. The Plain Language Of The Parties' Contract Is Unambiguous

Contract interpretation begins with the plain language of an agreement. Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc). If that language is "clear and unambiguous," this Court gives the terms of a contract their "plain and ordinary meaning." McAbee Const. Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). Absent ambiguity, the Court does not resort to extrinsic evidence to aid in interpretation because doing so would cast "a long shadow of uncertainty over all transactions" and contracts. Id. Further, when interpreting a contract, the Court gives meaning to all of the contract's provisions. M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004).

The terms of the contract here are clear. They require the Government to compensate H & R for custodial services based only upon the square footage of the buildings H & R cleaned. App. 2-11. No separate compensation is provided for supplies; the contract requires H & R to "furnish all materials, supplies, and vehicles necessary to comply with the requirements of the contract." App. 14. Nor is separate compensation provided for frequency or amount of services; the contract requires H & R to perform the various services called for by the contract, regardless of how long they take to perform.

The contract's language simply does not contemplate that H & R should be compensated for the Army's increased use or occupancy of the relevant buildings, as H & R asserts. This is a firm, fixed-price contract. This type of contract "assign[s] the risk to the contractor that the actual cost of performance will be higher than the price of the contract." Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir. 1996) (citing Federal Acquisition Regulations

("FAR") part 16.202-2, which provides that a firm, fixed-price contract "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss."); see also United States v. Spearin, 248 U.S. 132, 136 (1918) ("Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered."); ITT Arctic Services, Inc. v. United States, 524 F.2d 680, 691 (Ct. Cl. 1975) (noting that the Court of Claims "consistently held that the contractor in a fixed-price contract assumes the risk of unexpected costs.").

H & R complains that its costs increased during the course of contract performance, but it cannot identify any provision in the contract that places the risk of such cost increases upon the Government. Indeed, H & R's claim would convert this agreement into a cost-type contract — H & R seeks recovery for all of the costs, plus profit, that it incurred under this contract. See, e.g., App. 480 (calculating H & R's claim to be equal to its loss on the contract). This cannot be right, as a matter of law. H & R cannot be allowed to enter into a firm, fixed-price contract, then later claim that it is entitled to recovery simply because it lost money on the contract. Such a result would flatly contravene the plain terms of the contract. Accordingly, summary judgment in this case in the Government's favor is appropriate.

## B. The First Count Of H&R's Complaint Is Meritless

### 1. Introduction

The first count in H & R's complaint is styled "Breach of Contract." The count asserts four theories of recovery: Breach of an implied specification warranty, superior knowledge, misrepresentation, and breach of the duty to cooperate. Compl. ¶ 12-18. As we establish below, these claims are groundless, and no genuine dispute of material fact concerning them prevents

summary judgment in our favor.

2. **The Army Did Not Breach An Implied Specification Warranty**

H & R first asserts that the Government breached "its implied warranty of the accuracy and completeness of its specifications and requirements." Compl. ¶ 13. This claim is without merit because the contract at issue contains no such implied warranty.

Government specifications are covered by an implied warranty only when a contract provides detailed design specifications "for the production or construction of an end product and proper application of those specifications does not result in a satisfactory end product . . . ." PCL Construction Services, Inc., v. United States, 47 Fed. Cl. 745, 794 (2000) (citing Spearin, 248 U.S. at 136-37). This is the Spearin doctrine, and it does not apply to performance specifications. Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1582 (Fed. Cir. 1987).

If it contained any "specifications" at all, the contract here contained only performance specifications. In contrast to design specifications, which "describe in precise detail the materials to be employed and the manner in which the work is to be performed," performance specifications "'set forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection.'" Blake Construction Co., Inc. v. United States, 987 F.2d 743, 746 (Fed. Cir. 1993) (quoting J.L. Simmons Co. v. United States, 412 F.2d 1360, 1362 (Ct. Cl. 1969)). Even if performance specifications are "less complete than [a contractor] would have preferred," the specifications do not give rise to an implied warranty. See PCL Construction, 47 Fed. Cl. at 795. Indeed, the "courts and boards of contract appeals have repeatedly rejected the notion that the government is

liable for difficulties encountered by a contractor because performance specifications supplied by the government were insufficiently detailed to enable the contractor to perform the contract in an efficient or profitable manner." Id. (citing Sylvania Elec. Prods., Inc. v. United States, 458 F.2d 994, 999-1000 (Ct. Cl. 1972)).

Like the dredging contract in Stuyvesant, which specified a result, not a method, the contract here provided that H & R was to perform various tasks and to provide various supplies, leaving considerable discretion to H & R about how to achieve those objectives. See App. 12-17. Further, the contract did not require H & R to produce the sort of "final product" that implicates an implied specification warranty. See PCL Construction, 47 Fed. Cl. at 794. The contract's provisions are thus performance specifications, not design specifications, and the Spearin doctrine does not apply. See Stuyvesant, 834 F.2d at 1582.

Moreover, even if we assume that the contract's "specifications" gave rise to an implied warranty of "accuracy and completeness," as H & R claims, H & R cannot prove that the Army breached such a warranty. Spearin protects a contractor who furnishes an inferior product after relying upon the Government's specifications. 248 U.S. at 136-37. Here, H & R performed all of its contractual obligations; the company delivered a compliant contractual "product" in the supplies and services it provided. It merely lost money in the process. This loss did not result from any flaw in the contract; it resulted from H & R's low bid. Spearin provides no remedy in such a situation. H & R's first claim is thus meritless.

### 3. The Government Did Not Possess Superior Knowledge

H & R next asserts that the "Government had superior knowledge of the number of occupants of the buildings for which services were to be provided and the volume of supplies"

required by the contract, but that the Government failed to provide this information to H & R "during the course of its performance of the contract and to make any adjustments to the contract as a result of these changes." Compl. ¶ 14. This claim lacks merit.

The superior knowledge doctrine "imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance." Giesler v. United States, 232 F.3d 864, 876 (Fed. Cir. 2000). The doctrine requires a contractor to produce specific evidence that it "(1) undertook to perform without vital knowledge of a fact that affects performance costs or direction, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information." AT&T Communications, Inc. v. Perry, 296 F.3d 1307, 1312 (Fed. Cir. 2002).

H & R cannot satisfy any of the elements of this test. First, Mr. Hall testified that he computed H & R's bid based upon his assumptions concerning the number of occupants and the usage of the buildings covered by the contract. App. 768-69. H & R certainly knew, then, that the usage of the buildings could affect its costs under the contract. H & R might not have had any detailed knowledge about how building usage would change over the course of the contract, but neither did the Army. This contract was entered into on August 22, 2000, well before the events of September 11, 2001, and the ensuing conflicts in Afghanistan and Iraq that H & R claims led to an increase in base usage. H & R thus cannot prove the first and second elements required for its superior knowledge claim.

Nor can H & R prove the third required element of its superior knowledge claim. The

plain language of the contract's bid schedule and scope of work required that H & R receive compensation based upon the square footage of the areas it cleaned. App. 15, 45-51. Further, the contract obviously required H & R to provide all supplies and services needed under the contract, and for a fixed fee. The contract's provisions were straightforward and could not mislead a reasonable contractor.

Finally, the Government could provide no more information in the solicitation concerning base usage than it did — square footage and a list of the activities in the buildings covered — and H & R thus cannot prove the fourth required element of its superior knowledge claim. As we noted above, the Army could not know in 2000 precisely what base usage would be in 2003 or 2004; the Army had no information to provide to H & R on this topic before bidding closed. To the extent H & R bases its superior knowledge claim upon the Government's failure to provide information "during the course of . . . [H & R's] performance," H & R's claim must fail. The Government has no obligation to provide a contractor with information that the contractor can itself obtain. Giesler, 232 F.3d at 877. H & R's employees testified in detail concerning an increase in base usage during the course of the contract, and Mr. Hall testified that he knew he was losing money on the contract in 2002. App. 782-83, App. 774. H & R knew itself what conditions on the base were like, and the Government accordingly had no obligation to tell H & R anything concerning base usage. H & R's superior knowledge claim is thus entirely without foundation.

### 4. The Government Did Not Misrepresent Estimates

H&R next claims that the Government "misrepresented the estimates upon which H & R based its pricing in the Contract." Compl. ¶ 15. The Government did not misrepresent any of

the contract estimates, and H&R's claim therefore fails.

To prevail upon a claim of misrepresentation, a contractor must "show that the Government made an erroneous representation of a material fact that the contractor honestly and reasonably relied on to the contractor's detriment." T. Brown Constructors, Inc. v. Pena, 132 F.3d 724, 729 (Fed. Cir. 1997). A misrepresentation is material if it "would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." Id. (citing Restatement (Second) of Contracts § 162 (1979)).

The representations made here upon which H & R should have based its pricing concerned the square footage of the areas covered by the contract. App. 34-36. H & R does not even allege that these estimates were erroneous. Further, to the extent these estimates proved inaccurate over the life of the contract — or merely changed with time — the parties executed modifications adding or subtracting square footage. App. 75-76.

During his deposition, Mr. Hall testified that the only other representation made to H & R concerned an estimate of supplies required under the contract. App. 766. Mr. Hall claimed that he received and relied upon a list of supplies furnished by the Army as part of its specifications package. App. 766. H & R has yet to produce a copy of such a list. The Government has no record of ever sending such a list to H & R or any other bidders for the contract at issue. Nor was any supply list incorporated into the actual contract between the parties; instead, the contract merely contained a list of supplies "for informational purposes only." App. 14.

Even assuming, for the purposes of this motion, that H & R obtained a supply list from the Government before submitting its bid, H & R's argument still fails. To recover damages on the basis of an inaccurate estimate, H & R must "'show by preponderant evidence that estimates

it relied on were negligently prepared or were unreasonably inadequate, indicating a lack of due care in their preparation at the time the estimates were made.'" See Service Technicians, Inc. v. United States, 37 Fed. Cl. 383, 387-88 (1997). In promulgating an estimate for bidding-invitation purposes, "the Government is not required to be clairvoyant but it is obliged to base that estimate on all relevant information that is reasonably available to it." Womack v. United States, 389 F.2d 793, 801 (Ct. Cl. 1968).

If the Army provided a supply list estimate here, then this case resembles Service Technicians, where the Navy provided historical data in a solicitation concerning the volume of service calls for a fixed-price base maintenance contract. 37 Fed. Cl. at 383-85. The contractor performed more calls under the contract than the historical data suggested it would, and it sued when the Navy refused to provide it compensation. Id. This Court held that the Navy's estimate was not negligently prepared or so unreasonably inadequate to indicate a lack of due care in its preparation. Id. at 387.

Likewise, here, H & R cannot prove that the Army's estimate — again, if any existed — was negligently prepared. For the purposes of this motion, we assume that H & R obtained a copy of the supply item list that was furnished to the Directorate of Contracting by the Directorate of Public Works; Mr. Hall testified to using such a list in preparing H & R's bid. See App. 594, App. 766. Mr. Reimer testified that he created this list by examining the previous contract and making adjustments based upon changes in square footage of the buildings maintained. App. 633. This was a reasonable method to use in calculating supply usage under the contract; indeed, the list apparently proved accurate for the first year of the H & R contract because H & R's claim begins only in the second year of the contract.

Further, this list did not misrepresent anything, even if it proved inaccurate over the course of H & R's contract performance. See, e.g., App. 609. Such a list — an estimate — could not vary the plain terms of the contract, which required H & R to "furnish all materials, supplies, and vehicles necessary to comply with the requirements of the contract." App. 14. If H & R relied upon a supply list to its detriment, it did so at its own peril. H & R's misrepresentation claim is accordingly groundless.

Finally, H & R's misrepresentation claim appears to hinge entirely upon the Government's alleged estimate concerning supplies required by the contract. Compl. ¶ 15. Much of H & R's claim, however, relates to the services it provided to the Army, not just the supplies it provided. H & R simply cannot show that the Government misrepresented anything concerning the amount of services required by the contract. Indeed, Mr. Hall testified that he used the square footage estimates and building activity list provided by the solicitation to calculate the services portion of H & R's bid. App. 768-69. This information fairly represented the state of base usage at the time of the solicitation. That this information, particularly building usage, was subject to change over the course of the contract was obvious from the contract's pricing structure, which provided compensation on a square footage basis alone, without regard to building occupancy or usage. The Army thus misrepresented nothing concerning the contract's requirements for services, and the portion of H & R's claim based upon these requirements is without foundation.

### 5. The Government Did Not Breach Its Duty To Cooperate

H & R also accuses the Government of breaching its duty to cooperate. Compl. ¶ 16. This claim is without merit.

Every Government contract contains an implied duty to cooperate, which is encompassed within the duty of good faith and fair dealing. Orlosky Inc. v. United States, 68 Fed. Cl. 296, 311 (2005). A plaintiff's burden to prove a breach of the Government's implied duty of good faith and fair dealing is "'intended to be very difficult,' requiring clear and convincing proof that the Government specifically intended to injure plaintiff." Renda Marine Inc. v. United States, 66 Fed. Cl. 639, 648 (2005) (quoting Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1240 (Fed. Cir. 2002)). But see Tecom, Inc. v. United States, 66 Fed. Cl. 736, 771 (2005) ("[t]he presumption of good faith conduct of government officials has no relevance" with respect to "claims that the duties to cooperate and not hinder performance of a contract have been breached," and in such cases, proof of a violation need not be by clear and convincing evidence).

The Government cooperated fully with H & R throughout the life of this contract. When H & R's labor costs increased, the Government provided H & R with increased compensation pursuant to the Service Contract Act. App. 492. When the buildings' square footage increased, the Government modified the contract to provide H & R with increased compensation. App. 75-76. Even assuming H & R's supply or service costs increased, the Government had no duty to compensate H & R for those costs. In short, the Government took all actions required under the contract and its conduct was otherwise reasonable. H & R's claim for breach of the duty to cooperate accordingly fails.

### C. H & R's Constructive Change Count Is Baseless

In the second count of its complaint, H & R claims that it is entitled to an equitable adjustment for its "performance of services in excess of those reasonably estimated in the Contract and the providing of supplies in excess of those reasonably estimated in the

contract . . . ." Compl. ¶ 20. In fact, all services and supplies provided by H & R under this contract were contractually required, and H & R is not entitled to any increased compensation for its work.

When the contracting officer does not issue a formal change order, a contractor "may elect to treat the contracting officer's directive as a constructive change order and prosecute a claim for an equitable adjustment under the 'changes' provision of the contract," where the contracting officer "requires the contractor to perform work or to utilize materials which the contractor regards as being beyond the requirements of the pertinent specifications or drawings." Ets-Hokin Corp. v. United States, 420 F.2d 716, 720 (Ct. Cl. 1970). To identify a constructive change, the Court should consult the relevant contract language. Aydin Corp. v. Widnall, 61 F.3d 1571, 1577 (Fed. Cir. 1995).

H & R cannot prove that the Army required it to do anything "beyond the requirements of the pertinent specifications or drawings," a necessary element of an equitable adjustment claim. See Ets-Hokin Corp., 420 F.2d at 720. The contract's scope of work broadly required H & R to "furnish all materials, supplies, and vehicles necessary to comply with the requirements of this contract." App. 14. H & R implies that it could not profitably furnish the required supplies and services, but H & R does not, and cannot, identify any contractual provision that entitles it to increased compensation. The Government simply required H & R to comply with the contract, and nothing more. To the extent that H & R suggests that it performed services or provided supplies in excess of its contractual obligations, H & R cannot show that anyone with the requisite authority — i.e., the contracting officer — required as much. H & R is therefore not entitled to any increased compensation for a change.

**D. H & R's Implied Contract Count Is Unsupported**

In its third count, H & R asserts that "[r]epresentations made to H & R by the Government in the proposal and the Contract, and H & R's performance in reliance on those representations, constitute an implied contract" breached by the Government. Compl. ¶ 22-23. This claim is meritless. It is "well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc); Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990).

H & R alleges that it relied upon the Government's representations concerning the amount of supplies and services required under the contract, giving rise to an implied contract. The supplies and services required by the contract are obviously related to the contract, as would be any agreement between the parties concerning those supplies and services. Pursuant to Schism, this relationship forecloses the existence of an implied-in-fact contract. Accordingly, this claim is wholly without foundation.

**E. H & R's Equitable Estoppel Count Is Meritless**

In its fourth count, H & R claims that it "relied to its detriment" upon estimates provided by the Government and that therefore the Government is "estopped from denying its liability for the full amount of H & R's Claims." Compl. ¶ 24-26. This claim fails. The Government "may not be estopped on the same terms as any other litigant." Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984). To justify estoppel, a litigant must prove not only the traditional elements of estoppel, but that the Government engaged in "affirmative misconduct." United Pacific Ins. Co.

v. Roche, 401 F.3d 1362, 1366 (Fed. Cir. 2005). H & R does not allege, and the Government did not engage in, any sort of affirmative misconduct here. H & R's equitable estoppel claim is thus baseless. To the extent that H & R's claim might also be construed as asserting a claim for promissory estoppel, this claim should be dismissed because this Court lacks jurisdiction to consider such a claim. Gregory v. United States, 37 Fed. Cl. 388 (1997).

**F. H & R's Mutual Mistake Count Is Meritless**

In its final count, H & R asserts that its contract should be reformed because the parties were mutually mistaken about the "volume of supplies to be provided and the services necessary for the estimated square footage." Compl. ¶ 28-30. The parties were not mistaken about these facts, and this claim is thus unsupported.

Reformation is an "extraordinary remedy" available only upon presentation of satisfactory proof of four elements: "(1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation." National Australia Bank v. United States, 452 F.3d 1321, 1329 (Fed. Cir. 2006). The party seeking reformation must prove these elements by clear and convincing evidence. Id. A contractor is not entitled to reformation merely because it commits an error of business judgment. Liebherr Crane Corp. v. United States, 810 F.2d 1153, 1157 (Fed. Cir. 1987); see also Dakota Tribal Indus. v. United States, 34 Fed. Cl. 593, 596 (1995) (noting that an error in judgment occurs "where the bidder has the facts necessary to make the proper conclusion but, because of improper assumptions or faulty assessments of those facts, makes a bad business decision.").

To satisfy the first element of a reformation claim, a plaintiff must "allege that he held an erroneous belief as to an existing fact." Atlas, 895 F.2d at 750. If the existence of a fact "is not known to the contracting parties, they cannot have a belief concerning that fact; therefore, there can be no 'mistake.'" Id. Accordingly, "'[a] party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined [under the doctrine of mutual mistake of fact].'" Dairyland Power Co-op. v. United States, 16 F.3d 1197, 1203 (Fed. Cir. 1994) (citing Restatement (Second) of Contracts § 151 cmt. a (1981)).

H & R's claim fails because the parties were not mistaken about any existing fact when they entered into the contract. H & R's complaint demonstrates as much. H & R claims that its "additional costs" were incurred as a result of the "change in conditions at Fort Sill Army Base." Compl. ¶ 2. Even if, as H & R claims, the occupants of the relevant buildings increased over the term of the contract, the prospect of this specific increase was unknown to the parties when they entered into the contract. Again, the increase allegedly began following the United States' military response to September 11, 2001, a year after the contract was awarded. H & R was in just as good a position in 2000 as the Army to predict whether such an increase in base usage might occur; even if its prediction was inaccurate, that is not grounds for a mistake claim. See Dairyland, 16 F.3d at 1203.

Moreover, even if the parties failed to foresee an increase, any risk of loss from such an increase was placed squarely upon H & R by the contract's unambiguously open-ended supply and services requirements. The only "mistake" present in this case appears to be one of H & R's business judgment, and that type of mistake is simply not compensable. See Liebherr Crane, 810 F.2d at 1157. Accordingly, H & R's mutual mistake claim is meritless.

**G. H & R's Second Claim Is At Least Partially Unsupported**

In its second claim, covering the months of January, 2005, to September, 2005, H & R asserted that it spent $48,500.00 on supplies. App. 531. In support of this figure, H & R submitted supply invoices. App. 537-575. These invoices show that H & R spent $18,822.80 on supplies, a difference of $29,677.20 between the invoices and H & R's claim amount. Id. In his deposition, Mr. Hall was unable to explain this discrepancy, though he asserted that H & R could support its claim with documents. App. 771. To date, we have received no such documentation. We note that the supply costs in H & R's first claim correspond with its supply invoices. Compare App. 496 with App. 504-511.

Assuming that H & R is entitled to be reimbursed for all of its 2005 supply costs — a result that, as we establish above, would convert this into a cost-type contract — H & R must still show that its costs are supportable. See, e.g., Propellex Corp. v. Brownlee, 342 F.3d 1335, 1338 (Fed. Cir. 2003) ("We have stated that the preferred way for a contractor to prove increased costs is to submit actual cost data because such data 'provides the court, or contracting officer, with documented underlying expenses, ensuring that the final amount of the equitable adjustment will be just that — equitable — and not a windfall for either the government or the contractor.'"). If H & R cannot provide evidence supporting its claimed costs, summary judgment upon this portion of H & R's claim is appropriate for this reason alone.

**CONCLUSION**

For the reasons given above, the Court should grant our motion for summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Sean B. McNamara
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
MAJOR PATRICK L. GARY
U.S. Army Litigation Division
901 North Stuart Street, Suite 400
Arlington, VA 22203

JOE ALFORD
Attorney-Advisor
Office of the Staff Judge Advocate
Taylor Hall (Building 462)
Fort Sill, OK 73503

December 19, 2007

CERTIFICATE OF FILING

I hereby certify that on this 19th day of December, 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara