IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| H & R SERVICES, INC., an Alabama corporation, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-582C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully submits the following proposed findings of uncontroverted fact in connection with defendant's concurrently filed motion for summary judgment.

1. The Department of the Army ("Army") awarded a firm, fixed-price contract ("contract") on August 22, 2000, for custodial services performed in various administrative buildings at Fort Sill, an Army base in Oklahoma, to plaintiff, H & R Services ("H & R"). App. 1, 12.

2. Services covered by the contract included, among other things, floor maintenance, trash removal, spot cleaning, dusting, vacuuming, and the supplying of toilet paper, towels, trash bags, and hand soap. App. 15-16.

3. The contract provided for a base period of performance lasting from October 1, 2000, to September 30, 2001, followed by four one-year option periods. App. 45-51.

4. Prospective bidders submitted quotations based upon the estimated square footage of buildings to be serviced. App. 1-11, 34-36, 45-51.

5. H & R submitted the winning bid, for $1,128,810. App. 11, 67.

6. H & R's bid reflected static or decreasing costs for each of the option periods. App. 2-11.

7. The Government exercised all four of the contract's options. See, e.g., App. 75-76.

8. The Government agreed to compensate H & R for its increased hourly labor costs during performance, pursuant to the Service Contract Act. App. 492.

9. The contract provided that the Government reserved the right to add or subtract space to be maintained. App. 15. The parties did, in fact, agree to such additions and subtractions 12 times over the course of performance. App. 75-476; see, e.g., App. 460-62.

10. The contract required H & R to "furnish all materials, supplies, and vehicles necessary to comply with the requirements of the contract." App. 14. Although the contract provided an informational list of potential supplies, the contract did not specify any estimated quantities for the required supplies. See App. 14. In this respect, the contract differed from the maintenance contract preceding the H & R contract and the contract following it. Both of these contracts contained monthly supply usage estimates. App. 598; App. 609.

11. A list of estimated supplies was initially included in the internal government requirements package sent by the Directorate of Public Works, which oversaw the technical aspects of the contract, to the Directorate of Contracting, which assembled the solicitation. See App. 582-594 (excerpts from Exhibit 17 to the deposition of Carl Reimer, who testified to providing the documents in Exhibit 17 to the contracting office, see App. 632-634).

12. Sharel McAdoo, the contracting officer who awarded the contract, did not remember any "specific discussion" about the list of supplies — or contract language referring to the list — being removed from the solicitation, but that she did remember that the solicitation issued for the H & R contract was intended to be more "simplified" and "streamlined," which would have led to the deletion of the list and contract language referring to the list. App. 710-14.

13. Ms. McAdoo identified a draft of the solicitation where a list of supply quantities had

been crossed out by an Army employee. App. 711-12, referring to App. 620.

14. Though no list of supplies was included in the contract, the President of H & R, Roger Hall, testified during his deposition that he used such a list in preparing H & R's bid on the contract. App. 766. Mr. Hall asserted that the Army provided him a supply list in the solicitation. Id. He was unsure about whether H & R still possessed a copy of this list, but he asserted that he was looking for it. Id. Mr. Hall could not remember having any conversations with the contracting officer, Ms. McAdoo, before submitting his company's bid. App. 767.

15. In its second claim, covering the months of January, 2005, to September, 2005, H & R asserted that it spent $48,500.00 on supplies. App. 531. In support of this figure, H & R submitted supply invoices. App. 537-575. These invoices show that H & R spent $18,822.80 on supplies, a difference of $29,677.20 between the invoices and H & R's claim amount. Id. In his deposition, Mr. Hall was unable to explain this discrepancy, though he asserted that H & R could support its claim with documents. App. 771.

16. The contract provided for the frequency of the custodial tasks to be performed. App. 17. Certain base occupants, for example, received services every Friday; others received services every Tuesday and Friday. Id.

18. To calculate its bid for the services portion of the contract, Mr. Hall used an industry-wide standard in calculating the amount of time it would take his employees to clean the buildings covered by the contract. App. 768-69. This amount of time was contingent upon two factors, square footage and the "population density" of the buildings, which included both the density of people and the density of equipment in the buildings. Id. Mr. Hall considered the groups occupying the buildings, e.g., the Red Cross, then made assumptions about their population density, and then calculated his bid based upon those assumptions. Id. Mr. Hall does

not remember asking anyone in the Government how many people were present in buildings covered by the contract before submitting his bid. Id. at 768.

19. The Government's witnesses do not know whether the number of occupants in the buildings covered by the contract increased during the life of the contract. See App. 641 (deposition of Carl Reimer, who helped to prepare the technical portion of the solicitation); App. 669 (deposition of Peter Webb, who inspected H & R's work); App. 745 (deposition of Annette Arkeketa-Rendon, the contracting officer who denied H & R's claim).

20. H & R's former employees recall increases in specific buildings associated with the Iraq war effort. App. 782-83 (deposition of Jeannette Hairston, H & R's quality control manager and first-line supervisor); App. 793 (deposition of Wilburt Monroe, H & R's manager of operations for its Fort Sill contract).

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

Of Counsel:
MAJOR PATRICK L. GARY
U.S. Army Litigation Division
901 North Stuart Street, Suite 400
Arlington, VA 22203

JOE ALFORD
Attorney-Advisor
Office of the Staff Judge Advocate
Taylor Hall (Building 462)
Fort Sill, OK 73503

s/ Sean B. McNamara
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

December 19, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 19th day of December, 2007, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara