# LITIGATION REPORT

## H & R Services, Inc, v. United States

## No. 06-582C (Fed. Cl.), filed August 11, 2006

## I. STATEMENT OF FACTS:

On 1 October, 2000, Contract No. DABT 39-00-C-4032, was awarded by the U.S. Army Contracting Agency, Southern Region to H & R Services, Inc. of Huntsville, AL (Contractor). It included a base period (October 1, 2000 through September 30, 2001) and four one year option periods extending through September 30, 2005.

Thirteen bids were received. The low bid ($884,528.40) was permitted to withdraw. The H & R Bid was the next low ($1,128,810.1356). The other bids in order were: $1,186,835.3040, 1,272,985.7568, 1,279,919.70, and five bids were in the $1,500,00 to 1, 600,000.00 range.

This contract required providing janitorial services for approximately seventy-five (75) administrative buildings at Fort Sill, OK. No barracks are included. These services primarily required providing paper towels, soap, toilet paper, trash removal, dusting and mopping the floors on a scheduled basis. See contract clauses, paragraphs 18 and 22 in the Statement of Work. Specifically the particular buildings were described in paragraph 1 of the Statement of Work as "major headquarters, administrative areas, libraries and latrines."

This was a fixed price contract. Bids were based on an estimated square footage of buildings to be serviced which was set forth in the solicitation. Routine work was divided between installation users and reimbursable users. See Contract Line Items numbers (CLINs) 001AA and 001AB as examples and paragraph 22.1 of the Statement of Work. Latrines, Showers and locker rooms were separately estimated. See CLIN 001AC and paragraph 22.2 of the Statement of Work. When circumstances involving the use/occupancy of these buildings changed, all modifications were negotiated with the Contractor on a routine basis addressing the increase or decrease in square footage.

The Contractor made a request for an adjustment (amount ???), was received by the Contracting Officer (KO) on March 3, 2005 and denied by the KO on March 14, 2005, explaining this was a firm-fixed price contract.

Formal notice of the contract award was given by Mrs. Sharel McAdoo, on August 22, 2000. Mrs. McAdoo is no longer a contracting officer, but does work on Fort Sill. The Contractor's letter dated April 12, 2005, refers to conversations with a "Ms Moody, who was the KO at the time of award", and states "a supported supply cost

EXHIBIT 24

well as labor hours were addressed and discussed." He further states, "These hours, however, did not include additional requirements needed to support the Fort Sill and the war effort." He further states all the buildings listed in "Tab 3" are the increased area of service and such has "been verified by discussions with the responsible building coordinator." No such information was in fact provided. In fact a list of the buildings was provided at Tab 5 and merely listed all of the buildings serviced under the contract. ( ??????) This claim was informally denied by the KO on April 27, 2005, indicating the documentation was merely a list of supplies that was delivered to the Contractor's business address.

In an effort to support his claim the Contractor provided a letter dated June 15, 2005, attempting to explain the concerns raised by the KO's letter of April 27. He states the initial proposed amount of supplies was not sufficient to support the increase in troop levels and the increase is due to the "mission increase" at Fort Sill. As stated previously, the buildings serviced were administrative buildings and not barracks

A claim for an equitable adjustment in the amount of $165, 851.24 was sent to the Contracting Officer (KO) on or about July 5, 2005, for the period of January 1, 2002 through December 31, 2004. The KO issued a final decision denying this claim on August 11, 2005, for lack of documentation substantiating any increase in cost was due to Government action.

A similar claim for $37,359.76 was submitted to the KO by the contractor's attorney on or about March 14, 2006, for additional costs for the period from January 1, 2005 though September 30, 2005. On March 28, 2006, the KO advised the attorney that she could not evaluate this claim without further information. She explained this was a firm–fixed price contract and the Contractor has been compensated for any increased square footage. She specifically asked for specific building numbers, what excess supplies were required and agreed to withhold her decision for two weeks. When no further information was received, this claim was denied by the KO for lack of supporting documentation on June 20, 2006.

During the contract term, there have been twelve (12) modifications either increasing or decreasing the amount of square footage required to be serviced. See specifically Modification numbers 1, 2, 3, 4, 8, 10, 14, 16, 17, 19, 21 and 22.

Suit was filed in the Court of Federal Claims on August 11, 2006.

## II. SETOFF OR COUNTERCLAIM: NONE

**III. RESPONSE TO PLEADINGS:** In general the information alleged in paragraphs addressing jurisdiction (paragraphs 1-7) is essentially correct except for the statements in paragraph 2 alleging additional costs (sentences 2-4). The statements in paragraphs 7 and 8 are also accurate. However the remainder of the allegations (paragraphs 9-30) are primarily general conclusions or mere statements of belief and should be denied.

My proposed answer is attached.

## IV. MEMORANDUM OF LAW:

The essential facts are in dispute. The Contractor alleges all increased costs were the result of increased usage by the Government resulting from the war effort. It is anticipated he can prove these costs were actually incurred. The COR and DPW inspector will testify there was no increase in usage. Specifically these buildings are administrative offices and there would not be any significant increase in personnel due to current events.

There have been three Contracting Officers administering this contract. The initial Contracting Officer (McAdoo) administered this contract for approximately two years (but before 9-11) was not aware of any complaints. The current Contracting Officer (Arkeketa-Rendon) will testify the Plaintiff did not inform her of this situation until the claim was filed. Further, she can attest there have been numerous modifications to the contract both increasing and decreasing the square footage during the contract's term. Both are Government employees at Fort Sill. The Contracting Officer (Ray Dryse) who served in the time period between these ladies retired last year and is no longer a Government employee.

This is a fixed price contract. The plaintiff cannot use an equitable adjustment to reduce or increase his profit or loss for reasons unrelated to any change of condition. For example, a contractor who has underestimated his bid or encountered unanticipated expenses or inefficiencies may not properly use a modification to shift his own risks or losses to the Government. See Nager Electric Co.v. U.S., 194 Cl. Ct, 835, 851-853, 442 F. 2d 936, 945--946 (1971).

As to the plaintiff's claim, there is no presumption of reasonableness. In general, an administrative determination of the amount of an equitable adjustment is a pure question of fact. One case colorfully stated, just as defendant (Government) has the burden of proof when a decrease in price results from a contract change, the contractor "has the laboring oar, and bears the risk of failure of proof, when (an increase) is at issue." Nager Electric Co. v. U.S., *supra* at 946

In brief, the plaintiff has the burden to show, by a preponderance of the evidence, the elements of liability, causation and resulting injury. Dawson Construction Co v. Brown, 19994 U.S. App. LEXIS 22696. He need not prove his damages with absolute certainty, but must supply the court with a reasonable basis for computation and prove the increased costs were caused by the Government. Ralph L. Jones Co. v. U.S. 33 Fed Cl. 327 at page 16 of the opinion.

In summary, it is anticipated the plaintiff will be able to prove these costs were incurred at Fort Sill. We know of no other contract he had at the time of this contract's performance, although this should be verified through discovery. Also it can be

anticipated his employees will support his claim. We need to identify through discovery not only which employees are expected to testify, but specifically what buildings were involved. We must be prepared to rebut this assertion. This alleged increase in usage can be refuted by the Government's COR and inspector. Also the Contracting Officer can verify there is no documentation in the contract file making any such claim prior to when the initial claim was filed in 2005. Finally it can be argued since eleven other bidders submitted higher bids when the contract was competed, it is reasonable to conclude the plaintiff underestimated his costs initially.

## V. POTENTIAL WITNESSES:

**Annette Arkeketa-Rendon, Contracting Officer**
Fort Sill Directorate of Contracting, Bldg 1803
P.O. Box 33501
Fort Sill, OK 73503-0501
580-442-6222
FAX 580-442-8014
Email: annette.arkeketarendon@sill.army.mil

Residence:
2809 N.W. Morningside Drive, Lawton, OK 73507
580-354-0712

**Expected Testimony:** Mrs. Arkeketa-Rendon was the Contracting Officer when these claims were considered. She can testify to all aspects of the contract, the negotiations and denial of the claims as stated in her final decisions. Specifically, she can attest that the square footage estimates were based on historical information and her attempts to get specific documentation from the Contractor.

**Carl L. Riemer, Contracting Officer's Representative (COR)**
Directorate of Public Works (DPW)
Engineering Design Branch
1950 Barbour Road, Fort Sill, OK 73503
580-442-4620

Residence:
3022 N.W. Euclid, Lawton, OK 73507
580-355-3724

Expected Testimony: Mr. Riemer was the COR during the contract term. He can attest to the type of building usage (administrative) and any negotiations involving change in amount of footage. He also wrote the statement of work and can testify the initial square footages were based on the amount used in the previous contract.

**Mr. Peter K. Webb, Inspector**

Directorate of Public Works (DPW)
DPW Construction Branch
1950 Barbour Road, Fort Sill, OK 73503
580-442-6475

Residence:
8196 NW Madische Road
Lawton, OK 73507
580-492-4301

**Expected Testimony:** As an inspector for the custodial contract, Mr. Webb was responsible for measuring building square footage pertaining to contract changes/modifications during the contract term. He can also attest to the type of building usage and that there was no significant increase in personnel using these buildings during the contract term.

Mrs. Sharel McAdoo
Child and Youth Services, Bldg 4700
Fort Sill, OK 73503
580-442-5197

Residence:
3333 NE 135th
Lawton, OK 73507-5816
580-355-4557

**Expected Testimony**: As the procuring and initial administrative contracting officer, she can testify to the number of bids received in the initial solicitation, the plaintiff was the second low bid of thirteen bidders and she received no complaints of extra work during her contract term.

## VI. EXHIBITS: provided separately.