NO. 06-582C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

H & R SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

---

William H. Hickman
Hickman & Fitzpatrick, PLLC
119 N. Robinson, Suite 250
Oklahoma City, Oklahoma 73102

ATTORNEYS FOR PLAINTIFF

January 18, 2008

TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

STATEMENT OF ISSUES ........ 5

STATEMENT OF THE CASE ........ 6

SUMMARY OF THE ARGUMENT ........ 9

ARGUMENT AND AUTHORITIES ........ 10

I. Because the Government breached the Contract, the Court shall deny the Government's Motion for Summary Judgment and grant H & R summary judgment. ........ 10

A. Because H & R's interpretation of the Contract is reasonable and consistent with the language of the Contract and the facts surrounding its formation and performance, the Court should grant H & R's Motion for Summary Judgment ........ 10

B. Because the Government breached the Superior Knowledge Doctrine, the Court should grant H & R's Motion for Summary Judgment 14

C. Because the estimates provided by the Government were negligently prepared, H & R is entitled to compensation ........ 16

D. Because the Government ordered H & R to perform services and provide supplies outside the scope of the Contract, a constructive change has occurred allowing H & R to be compensated ........ 17

E. Because there is a mutual mistake concerning the Contract, H & R is entitled to the reformation of the Contract ........ 21

F. Because H & R has presented evidence to support its second claim, the Court should deny the Governments request for Summary Judgment on this portion of H & R's claim ........ 22

CONCLUSION ........ 23

## TABLE OF AUTHORITIES

### CASES

*Aydin Corp. v. Widalnall*,
61 F.3d 1571, 1577 (Fed. Cir. 1995)....................17

*Chemical Technology, Inc. v. U.S.*,
645 F.2d 934, 945-56, 227 Ct. Clm. 120, 138-39 (Fed. Cir. 1981)....................16

*Community Heating & Plumbing Company v. Kelso*,
987 F.2d 1575 (Fed. Ct. 1993)....................14

*Corbetta Construction Co. v. U.S.*,
198 Ct. Cl. 712, 461 F.2d 1330 (1972)....................10

*Craft Machine Works, Inc. v. U.S.*,
926 F.2d 1110 (Fed. Cir. 1991)....................10

*George Hyman Construction Co. v. U.S.*,
832 F.2d 574 (Fed. Cir. 1987)....................10

*Gresham & Company, Inc. v. U.S.*,
200 Ct. Cl. 97, 470 F.2d 542 (1972)....................11

*Helene Curtis Industries, Inc. v. U.S.*,
160 Ct. Clm. 437, 312 F.2d 774 (1963)....................14

*Hercules, Inc. v. U.S.*,
24 F.3d 188, 196 (Fed. Cir. 1994)....................14

*Hol-Garr Manufacturing Corp. v. U.S.*,
169 Ct. Cl. 384, 351 F.2d 972 (1965)....................10

*Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*,
314 F.3d 895, 903-04 (7th Cir. 2003)....................21

*Interstate General Government Contractor's, Inc. v. Stone*,
980 F.2d 1433 (Fed. Ct. 1992)....................14

*Service Technicians, Inc. v. U.S.*
37 Fed. Cl. 383 (1997)....................17

*The Macke Company v. U.S.*,
199 Ct. Cl. 552, 467 F.2d 1323 (1972) ........................................ 11

*Max Drill, Inc. v. U.S.*,
192 Ct. Cl. 608, 427 F.2d 1233 (1970) ........................................ 10

*Rice v. U.S.*,
192 Ct. Cl. 903, 428 F.2d 1331 (1970) ........................................ 10

*Womack v. U.S.*,
182 Ct. Clm. 399, 389 F.2d 793, 801 (Fed. Cir. 1992) ........................................ 16

OTHER AUTHORITIES

Restatement, 2nd Contracts Section 201 (1981) ........................................ 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **H & R SERVICES, INC.,** | **)** | |
| **an Alabama corporation,** | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 06-582C** |
| | **)** | **(Judge Wheeler)** |
| **THE UNITED STATES,** | **)** | |
| **Defendant** | **)** | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff H & R Services, Inc. ("H & R") respectfully requests that this Court deny Defendant's Motion for Summary Judgment and grant summary judgment in favor of Plaintiff. In support hereof, H & R relies upon this brief, Plaintiff's appendices, documents of record previously filed in the case as cited herein, and H & R's Counter-Statement of Facts.

**STATEMENT OF ISSUES**

1. Whether the Government has breached the Contract.

2. Whether the Government had superior knowledge of vital information relating to the Contract and/or the solicitation yet failed to provide that information to H & R.

3. Whether the Government misrepresented the estimates provided to H & R.

4. Whether the Government breached a duty to cooperate with H & R.

5. Whether H & R's performance giving rise to the claims was a result of constructive changes for which H & R should be compensated.

6. Whether the Contract should be reformed based upon mutual mistake.

## STATEMENT OF THE CASE

On March 8, 2000, the Government prepared the technical requirements for the Contract. Plf. App. 714-755. The Government requirements included a technical exhibit identifying supplies to be provided by the contractor and the estimated monthly usage of the supplies identified. *Id.* On June 5, 2000, the Government issued solicitation number DABT39-00-B-1001 to procure custodial services for Fort Sill Army Base. Plf. App. 961-1142. On June 5, 2000, the contracting officer sent a letter with the solicitation providing prospective bidders with information related to the custodial services contract that preceded the H & R Contract that is in dispute herein. Plf. App.756-758. Additionally, the contracting officer represented in the letter that only three areas in the solicitation were different from the prior custodial contract. *Id.* The prior custodial contract allowed the contractor to be paid for additional work related to mobilization support. Plf. App. 756-758; Plf. App. 807-808. The contracting officer did not state that the H & R Contract would be interpreted to not allow for compensation for mobilization efforts. Plf. App. 756-758.

On August 22, 2000, Contract DABT39-00-C-4032 was awarded to H & R. Plf. App. 1-180. During the course of performance, the contracting officer repeatedly directed H & R to perform work that was later memorialized in writing resulting in H & R being compensated for this additional work. Plf. App. 759-762; Plf. App. 763-778 (stating that the contractor's purpose in requesting this proposal is to make a modification that definitizes some actions you have already taken). On October 20, 2004, H & R submitted a request for price adjustment to the

Contract based on their conversation and the representations from the contracting officer, Mr. Ray Dryz. Plf. App. 781-784.

Furthermore, it is undisputed, that there were more people occupying and using certain buildings covered by the Contract over the course of performance by H & R. Def. App. 782-784. Additionally, it is undisputed that additional supplies were consumed in certain buildings covered by the Contract during the course of performance by H & R. *Id.* For example, H & R was directed by the Government to provide additional supplies for use on weekends and for use 24 hours-a-day for certain buildings covered by the Contract. Def. App. 782-784; Def. App. 514. As a result of these changes in occupancy and an increase in usage in certain buildings covered by the Contract, H & R had to provide more supplies. Def. App. 796. H & R also had to extend the hours worked by its employees in certain buildings covered by the Contract after repeated requests by employees for additional time to complete their work as a result of the change in occupancy and the increased usage in certain buildings covered by the Contract. Def. App. 796. It is undisputed that H & R complied with the terms of the Contract in providing supplies and services and that the inspector, Mr. Peter Webb, admits that H & R went beyond the requirements of the Contract by providing additional supplies and additional services to the Government. Def. App. 682.

Ms. Annette Arkeketa-Rendon was assigned to the Contract in approximately August 2004. Def. App. 732. She had no involvement and had no knowledge of H & R's performance, of any modifications to the Contract, or of any negotiations involving H & R concerning the Contract prior to approximately August 2004. Def. App. 732.

On November 18, 2004, Ms. Arkeketa-Rendon sent an e-mail to certain Government employees working on the Contract to inform them that any additional work to be performed by H & R would have to be through written modification. Plf. App. 779-780. However, Ms. Arkeketa-Rendon did not advise H & R of the contents of her e-mail or the change in the process relating to additional work being performed on the Contract. Def. App. 737.

The Government amended the custodial services contract that followed the H & R Contract to realign funds in support of the global war on terrorism to pay for a portion of the janitorial services and supplies provided under this follow-on contract. Def. App. 756; Plf. App. 1293-1307. Furthermore, the Government knew that there had been an increase in the mobilization and deployments from Fort Sill because of the global war on terrorism. The Government also knew that because of this increased mobilizations and deployments to support the global war on terrorism, the Government would, and did, modify certain service contracts on Fort Sill. Def. App. 758-759; Plf. App. 1313-1315; Plf. App. 1316-1320; and Plf. App. 1321-1322.

On March 1, 2005, H & R submitted a request for adjustment to the Contract. Plf. App. 181-464. On March 14, 2005, the Government responded to H & R's initial request for an equitable adjustment and denied same. Def. App. 491-492. On April 12, 2005, H & R submitted Claim 1 to the Government for calendar years 2002, 2003, and 2004 requesting an equitable adjustment in the amount of $165,851.24. This Claim was certified by H & R on June 15, 2005. Plf. App. 465-566; Def. App. 521-522. On April 27, 2005 and August 11, 2005, the

Government provided letters to H & R denying Claim 1. Def. App. 515-520; Def. App. 527-529. On March 14, 2006, H & R made a request for an adjustment for the period from January through September, 2005. Def. App. 530-532. On March 28, 2006, the Government requested additional information concerning H & R's claim for the calendar year 2005. Def. App. 533-535. On May 12, 2006, H & R submitted Claim 2 requesting an equitable adjustment to the Contract in the amount of $37,359.76 for the months of January 2005 through September 2005. Plf. App. 567-713. On June 20, 2006, the Government denied H & R's Claim 2. Def. App. 577-579.

## SUMMARY OF THE ARGUMENT

H & R fully performed pursuant to the Contract. Def. App. 682. H & R's bid price was fair and reasonable as determined by the Government at the time of contract award and as determined by the Government each time the four option periods were exercised on the Contract. Def. App. 67;724.

H & R, at the direction of the contracting officer and in support of its customer, performed additional services and provided additional supplies to certain buildings covered by the Contract. These additional supplies and services were necessary because the buildings were being used on weekends, for purposes different than from what was initially intended, and/or on a 24-hour basis so that the base could fulfill its mission.

H & R reasonably expected to be compensated for these additional services and supplies based on the course of conduct between the Government and H & R. For example, the contracting officer, on more than one occasion, authorized H & R to conduct work that was not

set forth in the Contract or in any written modification. The Government compensated H & R for this additional work each time. Unfortunately, the contracting officer, Mr. Ray Dryz, retired prior to H & R submitting its request for equitable adjustment even though Mr. Dryz had requested H & R to prepare such a proposal concerning the additional work that is the subject of this lawsuit. Def. App. 663-664; Plf. App. 759-762; Plf. App. 763-778; Plf. App. 781-784. The new contracting officer, Ms. Arkeketa-Rendon, was unaware of the additional work performed by H & R, and the conversations between Mr. Dryz and H & R concerning this additional work. In fact, she did not even attempt to contact Mr. Dryz about these conversations or review his e-mails to confirm the validity of H & R's claims. Rather, she simply denied the claims. Def. App. 732-733; Plf. App. 737-738; Plf. App. 781-784.

## ARGUMENT AND AUTHORITIES

### I. Because the Government breached the Contract, the Court shall deny the Government's Motion for Summary Judgment and grant H & R summary judgment.

#### A. Because H & R's interpretation of the Contract is reasonable and consistent with the language of the Contract and the facts surrounding its formation and performance, the Court should grant H & R's Motion for Summary Judgment.

The goal of contract interpretation is to determine the objective intent of the parties - what would a reasonable contractor have understood the Contract to mean, not what the drafter subjectively intended. *Corbetta Construction Co. v. U.S.*, 198 Ct. Cl. 712, 461 F.2d 1330 (1972); Restatement, 2nd Contracts Section 201 (1981). In interpreting a contract, where a provision of a contract is phrased in plain and unambiguous language, the words of that provision must be given their plain and unambiguous meaning in defining the rights and obligations of the

parties. *Craft Machine Works, Inc. v. U.S.*, 926 F.2d 1110 (Fed. Cir. 1991); *George Hyman Construction Co. v. U.S.*, 832 F.2d 574 (Fed. Cir. 1987). Furthermore, every portion of a contract must be considered and given meaning and effect, if it is possible to do so, and no portion of the contract may be rendered meaningless, useless, inexplicable or without purpose unless no other interpretation is possible. *Hol-Garr Manufacturing Corp. v. U.S.*, 169 Ct. Cl. 384, 351 F.2d 972 (1965); *Rice v. U.S.*, 192 Ct. Cl. 903, 428 F.2d 1331 (1970).

Additionally, the facts and circumstances surrounding the contract formation and the contract performance may be considered by the Court in determining the intent of the parties. For example, the Government has been held bound by the representations made of a designated technical representative during an official escorted site visit. *Max Drill, Inc. v. U.S.*, 192 Ct. Cl. 608, 427 F.2d 1233 (1970). Furthermore, it is a basic principle that a contemporaneous interpretation by the parties of contract terms prior to a dispute is entitled to great, if not controlling weight. *The Macke Company v. U.S.*, 199 Ct. Cl. 552, 467 F.2d 1323 (1972). The course of dealing between contracting parties may also assist in defining prospective contractual expectations of the parties resulting in either the contractor or the Government being bound. *Gresham & Company, Inc. v. U.S.*, 200 Ct. Cl. 97, 470 F.2d 542 (1972).

In the instant case, the Government argues that the Contract is a firm, fixed price contract. However, the plain language of the Contract does not state that it is a firm, fixed price contract. Plf. App. 1-180. Rather, the language of the Contract and the language contained in certain modifications refer to the "costs" under the Contract. Def. App. 304. As such, the Government's argument relying upon the Contract being a firm, fixed price contract should be denied as summary judgment is not appropriate when material facts are in dispute. Additionally,

even if the Contract is a firm, fixed price contract, H & R is entitled to be compensated for additional work performed at a direction of the Government. Simply stated, the mere fact that the Contract may be a firm, fixed price contract does not preclude the Government from paying additional monies to contractor or contractor being entitled to additional monies from the Government. Rather, the appropriate question is whether H & R's interpretation of the Contract is reasonable in light of the language of the Contract and the facts and circumstances surrounding the formation and performance of the Contract.

The Government also relies on the language in paragraph 15 of the Contract. This paragraph that provides the contractor shall furnish all materials, supplies, and vehicles necessary to comply with the requirements of this Contract. However, the Government's reliance upon this statement contains two deficiencies.

The first deficiency is that paragraph 15 does not make any reference to the contractor providing services under the Contract. There is no disputing that the Contract is a services contract. Rather, paragraph 1 of the Contract entitled, "Scope of Work," provides that the contractor shall provide the labor, management, supervision, personnel, tools, chemicals, equipment, materials, and supplies required to perform the custodial <u>services</u> at Fort Sill. Based on this provision, it appears that the supplies that are required are only those necessary to perform custodial services. These supplies may be vacuum bags, Windex, or other items used to clean a building. Whereas, in paragraph 18 of the Contract, the supplies identified are toilet paper, towels, etc. But, the Contract fails to specifically define the supplies required to perform custodial services and the Contract fails to state whether supplies, such as toilet paper and towels,

as referenced in paragraph 18 of the Contract, are to be provided by the contractor or the Government. See Respone to Defendant's Statement of Fact No. 2.

Additionally, the Contract stated with particularly the occupants of the buildings to be services. The primary consideration used by Mr. Hall in the calculation of the services portion of its bid was his reliance on the description of the occupant or use of the building - i.e., what services were being provided in that building as set forth in the solicitation. Def. App. 766, 768. The solicitation described the occupant of the buildings for which services were to be performed. Plf. App. 961-1142. Based on the occupant of the buildings, Mr. Hall was able to calculate the price for H & R's bid considering the population density and equipment density associated with the services rendered in the building. Def. App. 768-769.

In addition to the language of the Contract, the facts and circumstances surrounding the Contract formation support H & R' s interpretation of the Contract. The contracting officer told H & R that there were only three differences between the solicitation and the prior custodial contract. The prior custodial contract allowed for the contractor to be compensated for additional work resulting from mobilization. The contracting officer did not state in her letter to H & R that the Government's interpretation of the solicitation would no longer allow for the compensation to the contractor for additional costs associated with mobilization. Plf. App. 756-758, 807-808. Additionally, the Government clearly provided information concerning the prior custodial contract to H & R and other potential bidders with the solicitation. H & R asserts that this additional information provided by the Government included a technical exhibit containing the Government's estimated supply usage. Plf. App. 785-930; Def. App. 699-701; 766. These facts support H & R's interpretation of the Contract that it is to be compensated for

additional services and supplies resulting from mobilization and resulting from the Government's facility estimates.

Furthermore, the facts and circumstances surrounding the Contract performance also support H & R's interpretation of the Contract. The contracting officer, Ray Dryz, on more than one occasion, authorized H & R to perform additional work without any written modification being executed. H & R reasonably relied upon this course of conduct with the Government to perform additional services and to provide supplies with the expectation that the paperwork would catch up such that H & R would be compensated. See Plaintiff's Proposed Additional Fact No. 8. Therefore, the Court should grant summary judgment to H & R based on the interpretation of the Contract as set forth herein.

Based on the positions of the parties, the Court may determine the contract to be ambiguous. A contract may be determined to be ambiguous if it is susceptible to two different and reasonable interpretations, each of which is found to be consist with the contract language. *Community Heating & Plumbing Company v. Kelso*, 987F.2d 1575 (Fed. Ct. 1993). If the Court determines that the contract is ambiguous, then the principal of *contra proferentem* provides ambiguities in the contract are to be resolved against the drafter of the contract, and that if a contract is ambiguous and the non-drafting party follows an interpretation that is reasonable, that interpretation will prevail. *Interstate General Government Contractor's, Inc. v. Stone*, 980 F.2d 1433 (Fed. Ct. 1992). In the event the Court determines the Contract to be ambiguous, H & R requests the Court interpret the Contract against the Government and in its favor.

**B. Because the Government breached the Superior Knowledge Doctrine, the Court should grant H & R's Motion for Summary Judgment.**

The Government has a duty to cooperate with the contractor and to not hinder or interfere with its performance, including the duty to disclose vital information in which the contractor is ignorant. The Court's have found a change to the Contract when the Government should have disclosed information to the contractor. *Helene Curtis Industries, Inc. v. U.S.*, 160 Ct. Clm. 437, 312 F.2d 774 (1963). The doctrine of superior knowledge is generally applied to situations where: 1) A contractor is without vital knowledge of the facts that affect performance, cost or duration; 2) the Government is aware that the contractor had no knowledge of or any reason to obtain any such information; 3) any contract specification supplied mislead the contractor or did not put it on notice to inquire; and 4) the Government failed to provide the relevant information. *Hercules, Inc. v. U.S.*, 24 F.3d 188, 196 (Fed. Cir. 1994).

The elements of the superior knowledge doctrine are satisfied in the instant case. First, H & R prepared its bid based on the information contained in the solicitation as well as additional information provided by the Government. This additional information included an estimated supply usage list which was based on the prior custodial services contract. However, H & R was without the vital knowledge that the contractor on the prior custodial services contract had been issued a CDR for failing to adequately provide services and to provide the appropriate volume of supplies. Additionally, H & R did not know that the Government estimated supply usage list did not take into account that this prior contractor was failing to satisfy the contract obligations. See Plaintiff's Proposed Additional Facts No. 1 and 2.

Second, the Government knew H & R had no knowledge of the deficiencies of the prior contractor or of the fact that the estimated supply usage list did not reflect the actual supplies

used by this prior contractor. But, the Government had in its possession the actual supplies used by the prior contractor. Plf. App. 933-934. The Government elected not to provide these actual supply usage numbers to bidders such as H & R.

Third, these faulty estimates provided by the Government mislead H & R in its calculation of its prices on the Contract. Fourth, the Government did not give H & R either an updated supply usage estimate or the actual supply list. If H & R had been provided with the actual volume of supplies used or had been provided with an updated estimated supply usage list, H & R may have bid its prices differently. Therefore, the Government's failure to provide this relevant information concerning the volume of supplies used in the performance of custodial services is a breach of the superior knowledge doctrine for which H & R should be compensated.

**C. Because the estimates provided by the Government were negligently prepared, H & R is entitled to compensation.**

A contract is deemed to have been constructively changed thereby entitling a contractor to an equitable adjustment where the Government estimate did not take into account all information available to it and thereby mislead, or any in event, did not adequately inform bidders on the contract as to the scope of the contract they were bidding on. *Womack v. U.S.*, 182 Ct. Clm. 399, 389 F.2d 793, 801 (Fed. Cir. 1992). In the instant case, the Government provided an estimate of supply usage as a part of the solicitation. The Government technical representative, Mr. Reimer, testified that he created this list by examining the estimates included with the previous contract and " adding a little bit for inflation." Def. App. 633. Mr. Reimer was not notified that the estimates of the prior contract may have been inaccurate based upon the failure of the contractor to adequately provide the supplies. Furthermore, there is no evidence that Mr.

Reimer used the actual supplies used by the contractor on this prior custodial services contract in calculating the estimates provided to H & R. However, it is undisputed, that the Government had in its possession these actual figures. See Plaintiff's Proposed Additional Fact Nos. 1 and 2; Plf. App. 933-934.

The failure of the Government to look at the prior years actual usage, as compared to the prior years estimates, was found to be a failure to observe the standard reasonable care. Furthermore, a Government official who prepares the IFB and does not question the estimates or attempt to verify them is found to have failed to check all reasonably available information entitling the contractor to an adjustment. *Chemical Technology, Inc. v. U.S.*, 645 F.2d 934, 945-56, 227 Ct. Clm. 120, 138-39 (Fed. Cir. 1981).

In the instant case the Government failed to check all reasonably available information to ensure the estimates provided to H & R were accurate. Furthermore, H & R relied upon these estimates in the preparation of their bid. Def. App. 766-768. As such, H & R was not adequately informed as to the scope of the contract that they were bidding on such that an adjustment is justified.

**D. Because the Government ordered H & R to perform services and provide supplies outside the scope of the Contract, a constructive change has occurred allowing H & R to be compensated.**

A constructive change entails two basic components. A change competent and an order component. A change component describes work outside the scope of the contract, while the order component describes a reason that the contractor performed the work. Thus, if the Government either expressly or implied or implied orders work outside the scope of the Contract, a constructive change arises for the work performed. *Service Technicians, Inc. v. U.S.* 37 Fed.

Cl. 383 (1997). To identify a constructive change, the Court should consult the relevant contract language. *Aydin Corp. v. Widalnall*, 61 F.3d 1571, 1577 (Fed. Cir. 1995).

A review of the pertinent contract language and consideration of the facts and circumstances surrounding the formation and performance of the Contract establish that a constructive change has occurred. H & R prepared its bid based on the solicitation. H & R relied upon the description of the occupants in the buildings provided in the solicitation as representing the services that were being provided in those buildings in the calculation of the hours necessary to provide custodial services. H & R also relied on an estimated supply usage list provided by the Government to prepare its bid. Additionally, H & R relied upon the Government's representation that the Contract was to be interpreted consistent with the prior custodial contract except for three changes. The Government's representation identifying these three changes did not state that the provision in the prior custodial contract concerning compensation for work in support of mobilization efforts was one of the differences. *See* Plaintiff's Proposed Additional Facts Nos. 4 and 5; Plf. App. 1-180.

During the performance of the Contract, H & R representatives entered into buildings covered by the Contract on a daily basis. Def. App. 781. The buildings covered by the Contract were visited to ensure compliance with the Contract, to respond to a complaint and/or to provide additional supplies. *Id*. at 781-782. H & R representatives observed that there were more people occupying and using certain buildings covered by the Contract after Fort Sill began to mobilize - i.e. 2002. Def. App. 782-784. H & R representatives also observed more supplies being used in certain buildings covered by the Contract during this same period of time. *Id*. Because H & R tracked the supplies it purchased for the Contract to ensure that all of these

supplies were delivered to Fort Sill, H & R was able to determine that the volume of supplies being used was increasing. Def. App. 785. During the course of performance of the Contract, H & R was directed to provide additional supplies for use on weekends and for use 24 hours-a-day for certain buildings covered by the Contract. *Id*; Def. App. 514. As a result of these changes in occupancy and the increased usage in certain buildings covered by the Contract, H & R had to provide more supplies. Def. App. 796. H & R was also required to provide additional janitorial services. As a result, H & R also had to extend the hours worked by its employees in certain buildings covered by the contract after repeated requests by employees for additional time to complete their work as a result of the change in occupancy and the increased usage in certain buildings covered by the Contract. Def. App. 796. The primary contracting officer for the Contract, Mr. Ray Dryz, routinely directed H & R to perform services prior to a written modification being executed. Def. App. 663-664, For example, on June 11, 2002, the contracting officer, Mr. Ray Dryz, advised H & R that the letter was a "verbal confirmation of the requested additional service described "and that a formal modification for the additional service" will be issued before the end of this month." Plf. App. 759-762. Additionally, on March 27, 2003, the contracting officer, Ray Dryz, sent a letter to H & R requesting a proposal for the changes in services to the contract. Mr. Dryz stated in this letter that "my purpose in requesting this proposal is to make a modification that definitizes some actions that you have already taken. Therefore if your effective date differs from the effective I show above, I request your proposal show the actual effective date." Plf. App. 763-778. H & R performed additional services and provided additional supplies to support the change in occupation of the buildings

and the increased occupancy in the buildings based on conversations with contracting officer Dryz. Plf. App. 781-784.

On September 25, 2000, the Government issued Amendment No. 1 to the contract. This amendment was effective October 1, 2000 (the date of the award of contract). Amendment No. 1 included an updated bid schedule, floor plans, and technical exhibit list of buildings to be cleaned. Def. App. 460-476. Furthermore, on May 4, 2001, the Government issued Amendment No. 2 to the contract. This amendment was also effective October 1, 2000. This amendment also deleted the building list technical exhibit and replaced it with a revised list of buildings to be cleaned under the terms of the Contract. Def. App. 395-401.

On October 20, 2004, H & R requested an adjustment to the contract due to increases in the population and usage in certain buildings causing the services and supplies associated with the contract to escalate. H & R submitted the proposal for a price adjustment at the direction of Contracting Officer Dryz. Def. App. 686; Plf. App. 781-784. Ms. Arkeketa-Rendon recalls seeing H & R's request, but she did not make any attempt to contact Mr. Dryz, even though he is mentioned in H & R's letter. Furthermore, Ms. Arkeketa-Rendon did not even respond to H & R's letter. Plf. App. 781-784; Def. App. 737-738.

Since at least 2003, the mission on Fort Sill has grown, including, but not necessarily limited to the Training Service Center Mission, the Public Works Mission, and the Adjutant General's Mission. Def. App. 95-698. The Government knew that there had been an increase in the mobilization and deployments from Fort Sill because of the global war on terrorism. The Government also knew that because of this increased mobilization of troops and deployments to support the global war on terrorism, the Government would, and did modify

certain service contracts. Def. App. 758-759; Plf. App. 1313-1315; Plf. App. 1316-1320; and Plf. App. 1321-1322.

Based on the language of the Contract, the facts and circumstances involved in the formation of the Contract and the facts and circumstances involved in the performance of a contract, a constructive change has occurred. The order to perform the work is evident from the direction and course of conduct between H & R and Dryz. The order is implied from the Government after October 20, 2004, because the Government failed to respond to H & R's request or advise H & R of the changes to the requirements resulting from the base mobilizatioin.. The constructive change involves an increased consumption of supplies by the Government. This increased consumption of supplies was the result of the faulty estimate provided by the Government prior to the award of the Contract, the modifications to the Contract that changed the buildings covered by the Contract effective immediately upon Contract award the modifications to the Contract that changed in the occupants of the buildings covered by the Contract and the change in requirements because of the base mobilization. For example, several of the buildings in which H & R seeks additional compensation had hours of operation from 7:30 a.m. to 4:00 p.m. but, during the course of contract performance, the hours of operation for several buildings changed to be occupied 24 hours-a-day, seven days a week. H & R was directed by either the contracting officer, Mr. Dryz, Mr. Webb, or customers in the buildings pursuant, to the course of conduct between the parties, to provide these additional supplies.

H & R also incurred additional service costs because of the change in the buildings covered by the Contract, changes in the occupants of the buildings, and the change in the

requirements because of base mobilization. Thus, a constructive change exists so H & R should be compensated.

**E. Because there is a mutual mistake concerning the Contract, H & R is entitled to the reformation of the Contract.**

Reformation of a written agreement on the ground of mutual mistake is available upon presentation of satisfactory proof of four elements: (1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation. *Atlas Corp. v. U.S.*, 895 F.2d 745, 750 (Fed. Cir. 1990). An erroneous mutual belief about the contents of a written agreement is sufficient to constitute a "mistake" for this purpose. Reformation is available "when the parties, having reached an agreement and having attempted to reduce it to writing, fail to express it correctly in writing." *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 903-04 (7th Cir. 2003) (quoting Restatement (Second) of Contracts § 155, cmt. a (1981). These four elements are satisfied in the instant case.

The parties to the Contract were mistaken in their belief regarding a fact. The fact to which they were mistaken is whether compensation would be paid for work in support of mobilization efforts. On June 5, 2000, the contracting officer, Ms. Sharel McAdoo, sent a letter to H& R. In this letter, she said there were only three areas in which the solicitation differed from the prior custodial contract. Plf App. 756-758. This prior custodial contract contained a provision dealing with mobilization and mobilization support that provided that any work performed in support of base mobilization efforts will be considered a change to the contract and that the contractor will be paid for any increase or decrease in the contractor's cost or the time

required for performance. Plf. App. 756-758; 807-808. But, the June 5, 2000, letter from the contracting officer to H & R did not state that this provision concerning compensation for work in support of mobilization efforts was one of the differences. *Id*.

The mistaken belief has as to whether compensation would be paid for work in support of mobilization efforts constitutes a basic assumption underlying the Contract. Furthermore, this mistake had material effect on the bid price submitted by H & R as it did not have to include a contingency factor in its prices to account for an increase in costs associated with mobilization. Finally, the Contract did not put the risk of this mistake on H & R. Rather, the Contract fails to express upon whom the risk of additional costs associated with mobilization shall be borne. Therefore, H & R respectfully requests the Court grant summary judgment on its mutual mistake claim and reform the Contract such that H & R is compensated for its additional costs associated with the mobilization efforts on Fort Sill Army Base.

**F. Because H & R has presented evidence to support its second claim, the Court should deny the Governments request for Summary Judgment on this portion of H & R's claim.**

The Government asserts that a portion of H & R's claim covering the months of January, 2005 to September, 2005 is not supported by specific documentary evidence. H & R has supplied the Government with the Empire Paper invoices identifying the specific supplies purchased for the Contract and delivered to Fort Sill. These invoices do not represent the total supply costs incurred by H & R. In fact, Mr. Hall testified on behalf of H & R that the claim for the months of January 2005 to September 2005 were evidenced not only by the Empire Paper Supply invoices, but that these supply costs also included fuel costs, petty cash purchases for supplies such as from Sam's Wholesale, and equipment costs. Def. App. 771. Mr. Hall also testified that these documents were lost in a flood. Def. App. 773. Therefore, H & R requests

that the Court deny the Government's Motion for Partial Summary Judgment on the claim for the period from January 2005 through September 2005, because H & R may present oral evidence as to these additional damages in the event it is unable to locate the additional supporting documentation.

## CONCLUSION

For the reasons given above, Plaintiff H & R Services, Inc. respectfully requests that the Court deny the Government's Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment.

Respectfully submitted,
HICKMAN & FITZPATRICK, PLLC

s/William H. Hickman
William H. Hickman, OBA No. 18395
119 N. Robinson, Suite 250
Oklahoma City, Oklahoma 73102
Telephone: (405) 605-2375
Facsimile: (405) 605-2374

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing was mailed this 18th day of January, 2008, to the following attorneys of record:

Sean B. McNamara
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20005

s/William H. Hickman