NO. 06-582C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

H & R SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

Of Counsel:
CAPTAIN LISA M. SATTERFIELD
U.S. Army Litigation Division
901 North Stuart Street, Suite 437
Arlington, VA 22203

JOE ALFORD
Attorney-Advisor
Office of the Staff Judge Advocate
Taylor Hall (Building 462)
Fort Sill, OK 73503

February 28, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. H & R Has Abandoned Four Of The Claims In Its Complaint . . . . . . . . . . . . . . . 1

II. Plaintiff's Interpretation Of The Contract Is Unreasonable . . . . . . . . . . . . . . . . . . 2

A. H & R Entered Into A Firm, Fixed-Price Contract . . . . . . . . . . . . . . . . . . 2

B. H & R Offers No Reasonable Interpretation Of Its Contract . . . . . . . . . . 3

III. The Government Did Not Possess Superior Knowledge . . . . . . . . . . . . . . . . . . . . 6

IV. The Government Did Not Misrepresent Estimates . . . . . . . . . . . . . . . . . . . . . . . . 7

V. No Constructive Change Occurred Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI. H & R Is Not Entitled To Reformation Because Of Mutual Mistake . . . . . . . . . 11

VII. H & R Has Not Presented Sufficient Evidence Concerning Its Second Claim . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 12

Fed. Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . 10

Flexfab, L.L.C. v. United States,
424 F.3d 1254 (Fed. Cir. 2005) . . . . . . . . . . 10

Gant v. United States,
417 F.3d 1328 (Fed. Cir. 2005) . . . . . . . . . . 3

Gardiner, Kamya & Associates, P.C., v. Alphonso Jackson,
Secretary of Housing and Urban Development,
467 F.3d 1348 (Fed. Cir. 2006) . . . . . . . . . . 6

Garside v. Osco Drug, Inc.,
895 F.2d 46 (1st Cir. 1990) . . . . . . . . . . 12

McAbee Const. Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . 5

Papasan v. Allain,
478 U.S. 265 (1986) . . . . . . . . . . 3

Webco Lumber, Inc. v. United States,
677 F.2d 860 (Ct. Cl. 1982) . . . . . . . . . . 1

### REGULATIONS

48 C.F.R. § 16.307 (2000) . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| H & R SERVICES, INC.,<br>an Alabama corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-582C<br>(Judge Wheeler) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, submits this opposition to plaintiff's cross-motion for summary judgment and reply to plaintiff's response to our motion for summary judgment. H & R's cross-motion is wholly without merit. H & R effectively asks the Court to cast aside its fixed-price contract and award it damages based upon its costs, but it offers no sound basis for such a result. Accordingly, we respectfully request that the Court grant our motion for summary judgment.

## ARGUMENT

### I. H & R Has Abandoned Four Of The Claims In Its Complaint

As an initial matter, H & R has abandoned four of the eight counts pleaded in its complaint, and summary judgment in the Government's favor on those counts is accordingly appropriate. See, e.g., Webco Lumber, Inc. v. United States, 677 F.2d 860, 864 (Ct. Cl. 1982) ("Although the plaintiff's petition also alleged . . . that there was a mutual mistake in the contract . . . the plaintiff has not argued this point in its brief. We therefore deem the contention abandoned."). First, H & R fails to respond to our motion for summary judgment concerning H & R's claim that the Government breached "its implied warranty of the accuracy and

completeness of its specifications and requirements." Compl. ¶ 13; Def. Mot. 11-12.[1] Second, H & R does not respond to our motion concerning its claim that the Government "breached its duty to cooperate with H & R." Compl. ¶ 16; Def. Mot. 17-18. Third, H & R fails to address the portion of our motion concerning H & R's claim that the Government breached an implied contract between the parties. Compl. ¶ 22-23; Def. Mot. 20. Fourth, H & R does not respond to our argument concerning its equitable estoppel claim. Compl. ¶ 24-26; Def. Mot. 20-21. Accordingly, the Court should grant summary judgment in our favor concerning these claims.

## II. Plaintiff's Interpretation Of The Contract Is Unreasonable

### A. H & R Entered Into A Firm, Fixed-Price Contract

As we established in our motion for summary judgment, H & R's contract is clear and unambiguous. Def. Mot. 9-10. The contract required H & R to provide, on a firm, fixed-price basis, all supplies and services necessary under the contract. Def. App. 12-16. H & R's complaint appears to seek to convert its agreement into a cost-type contract, plainly an impermissible result, as we noted in our motion for summary judgment. Def. Mot. 10. In its response to our motion, H & R seems to wholly embrace this flawed notion, asserting that the plain language of the contract does not support our reading because the contract refers to "costs." Pl. Mot. 11-12. H & R also claims that a dispute of material fact concerning the type of contract it entered into precludes summary judgment. Id.

H & R cannot seriously dispute that this was a firm, fixed-price contract. The contract

[1] "Compl. ___" refers to the complaint. "Def. Mot. ___" refers to defendant's motion for summary judgment. "Pl. Mot. ___" refers to plaintiff's January 18, 2008 brief; because the pages of plaintiff's brief are not consecutively numbered, we refer to the page number stamped at the top of plaintiff's filing by the Court's ECF system. "Pl. PFUF at ___" refers to plaintiff's proposed findings of uncontroverted fact. "Def. App. ___" refers to the appendix defendant filed with its motion for summary judgment. "Plf. App. ___" refers to plaintiff's appendix.

does, in fact, say that it is a firm, fixed-price contract. On its second page, under Item No. 0001, the first line of the contract says "FFP - Furnish all supervision, labor, equipment, materials and supplies . . . ." Def. App. 2. "FFP" stands for firm, fixed price. The contract thus contains none of the clauses required by the FAR for cost-type contracts. See 48 C.F.R. § 16.307 (2000). H & R was accordingly entitled to receive in compensation no more than the fixed amount provided for by the contract. Further, this is an issue of contract interpretation, which is a question of law, not of fact, so H & R's attempt to create an issue of material fact here is groundless. See Gant v. United States, 417 F.3d 1328, 1331 (Fed. Cir. 2005) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986), for the proposition that courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

**B. H & R Offers No Reasonable Interpretation Of Its Contract**

Perhaps recognizing the fragility of its contract-type argument, H & R also asserts that even if its contract is a firm, fixed-price agreement, this does not automatically preclude it from receiving more money. Pl. Mot. 12. In principle, we agree with H & R on this broad point; if any of the various specific theories it advances were true — e.g., that the superior knowledge doctrine applied or that a mutual mistake occurred here — then H & R might be entitled to additional compensation regardless of the type of contract into which it entered. As we demonstrated in our motion for summary judgment, however, and as we show again below, none of H & R's theories has any merit.

Apart from H & R's specific theories, though, H & R also appears to assert that the contract language itself supports summary judgment in H & R's favor. Pl. Mot. 12-14. The contours of H & R's contract interpretation argument are difficult to pin down. Beyond the vague and infirm idea that the contract permits it to recover its costs, H & R fails to identify

precisely which portion of the contract entitles it to a recovery. Instead, H & R makes two nonsensical arguments concerning the contents of the contract, then points to the "facts and circumstances" surrounding contract formation and performance in support of its "interpretation of the Contract." Pl. Mot. 13-14. At the very least, H & R asserts, the contract is somehow ambiguous and should be interpreted against the Government. Pl. Mot. 14. None of this is persuasive.

The first of H & R's illogical arguments concerning the contents of the contract is an attempted refutation of our reliance upon paragraph 15 of the contract, which plainly requires H & R to "furnish all materials, supplies, and vehicles necessary to comply with the requirements of this contract." Def. App. 14; Pl. Mot. 12-13. H & R asserts that the contract "fails to specifically define the supplies required to perform custodial services and the Contract fails to state whether supplies, such as toilet paper and towels, as referenced in paragraph 18 of the Contract, are to be provided by the contractor or the Government." Pl. Mot. 12-13. We do not understand the point of H & R's argument concerning paragraph 15, but it is wrong regardless. The contract requires H & R to "[r]esupply toilet tissues, towels, and hand soap (bar and/or liquid)," and it requires H & R to take out the trash, which would necessarily require the use of trash bags. Def. App. 16-17. These requirements cover all the supplies listed in paragraph 18. Paragraph 15 plainly requires that "the Contractor," not the Government, furnish these supplies. Def. App. 15. That doing so may have cost H & R more than it originally estimated is simply not compensable under the contract.

Second, H & R notes that the contract "described the occupant of the buildings for which services were to be performed," and that H & R relied upon this description in calculating its bid. Pl. Mot. 13. H & R does not explain how the contract's description of building occupancy

entitled it to exceed its bid amount.

The contract itself not offering much help, H & R turns to extrinsic evidence. This is inappropriate, given the contract's clarity. See McAbee Const. Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). It is also fruitless. H & R first cites a letter, sent by the contracting officer to prospective bidders, stating that the contract differed from the previous contract in three areas. Pl. Mot. 13; Plf. App. 756. The letter did not say that the contract no longer contained a "mobilization clause," which provided for additional compensation in the event of a troop mobilization. Id. H & R apparently asserts that because the contracting officer's letter does not address the deletion of the mobilization clause, that the clause was still somehow a part of the contract. The counter-argument is obvious: The Government indisputably took the mobilization clause out of the H & R contract, so it must have meant not to compensate the contractor for increased costs due to mobilization. The contracting officer's letter cannot alter the plain language of the agreement, and it is thus irrelevant. Nor is H & R's reliance upon the "technical exhibit containing the Government's estimated supply usage" any more persuasive. Pl. Mot. 13. Even if the Government provided such a list, this would not alter the contract's plain requirement that H & R provide all supplies and services necessary under the contract.

Finally, H & R states that the contracting officer, "on more than one occasion, authorized H & R to perform additional work without any written modification being executed." Pl. Mot. 14. H & R asserts that it relied upon this course of conduct when providing "additional" supplies and services. Id. If H & R in fact relied upon such a course of conduct, and is not merely concocting a *post hoc* rationalization for its poor business judgment, then that reliance was patently unreasonable. As we explain in more detail in Section V, the modifications to the contract identified by H & R all concerned square footage or days of service, which the contract

contemplated could be changed verbally prior to written modification. Def. App. 15. H & R had no reasonable basis to believe that these modifications meant it could spend money freely in anticipation of later compensation.

In short, this contract is not ambiguous, and the Court should ignore H & R's invocation of the doctrine of *contra proferentum*. As the United States Court of Appeals for the Federal Circuit has noted, the rule of *contra proferentum* is a "rule of last resort" that "is applied only where there is a genuine ambiguity and where, after examining the entire contract, the relation of the parties, and the circumstances under which they executed the contract, the ambiguity remains unresolved." Gardiner, Kamya & Associates, P.C., v. Alphonso Jackson, Secretary of Housing and Urban Development, 467 F.3d 1348, 1352 (Fed. Cir. 2006). H & R does not even identify which provision of the contract it thinks is ambiguous. Its reading of the contract as a whole is certainly unreasonable, and the Court should accordingly decline to apply *contra proferentum*, and instead grant our motion for summary judgment.

## III. The Government Did Not Possess Superior Knowledge

H & R continues to press its theory that the Government breached an implied duty to disclose its alleged superior knowledge. Pl. Mot. 15-16. We addressed this topic in our motion for summary judgment, Def. Mot. 12-14, but H & R ignores our analysis. Instead, H & R advances a superior knowledge argument entirely inconsistent with its basic theory of the case, that the supplies and services it provided under its contract increased with the onset of war and a consequent mobilization at Fort Sill, in 2002, more than a year after the Army awarded it the contract. Compl. ¶ 2; Pl. PFUF at 12.

In particular, H & R asserts that the Government did not disclose that the previous contractor failed to provide adequate supplies pursuant to the contract. Pl. Mot. 15. H & R thus

argues that the supply list provided by the Government was faulty, because that list was inadequate even for the prior contractor. Id. The problem with this argument is that H & R performed without incident for the first year of its contract. H & R seeks additional compensation for only 2002 and beyond, following an increase in base usage. Def. App. 494 (H & R's claim, noting that "[t]he mobilization required at Fort Sill was not in place at the time the contract was awarded." (emphasis in original)); Def. App. 522. If the estimated list provided by the Government was inaccurate, H & R would have had supply and labor problems from the beginning of the contract, but this was simply not the case. That the Government did not disclose the prior contractor's problems is thus irrelevant.

As we established in our motion for summary judgment, the contract here plainly required H & R to furnish all supplies and services necessary to perform pursuant to the contract. The Army could not know what base usage would look like two or three years into contract performance; accordingly, the Army based its contract pricing upon square footage, which could be added or subtracted with ease from the contract. Def. Mot. 13-14. From this perspective, the supply estimate allegedly provided by the Army could have been obviated by the routine addition or subtraction of building space. To the extent H & R relied upon the supply estimate to calculate its bid price, then, it did so unreasonably, given the plain structure of the contract. H & R's superior knowledge claim is thus entirely groundless, and summary judgment in our favor on this claim is appropriate.

## IV. The Government Did Not Misrepresent Estimates

H & R next claims that the Government negligently prepared its supply list estimate. Again, H & R does not address the detailed argument we advanced concerning this claim in our motion for summary judgment. Def. Mot. 14-17. Instead, H & R claims that the Government

provided it with an estimated supply list prepared by Mr. Reimer, but that this list was inaccurate because it did not reflect the prior contractor's actual use of supplies. Pl. Mot. 16-17. This was a misrepresentation, H & R contends, because the "the Government had in its possession these actual figures." Id. at 17.

H & R has not read the record carefully enough. In its Proposed Additional Findings of Uncontroverted Fact, H & R notes that the estimate prepared by Mr. Reimer is at "Def. App. 582-594." Pl. PFUF at 10. The particular page at issue is at Def. App. 594 — this is the supply list H & R claims it was provided. H & R then notes that the "actual figures" concerning supplies used by the previous contractor are listed in an email contained at Plf. App. 933. Pl. Mot. 17. As the handwritten list on the next page demonstrates, this list was provided by Wilbert Monroe, the project manager for the previous contractor who went on to become H & R's project manager. Plf. App. 934; Def. App. 792. The problem for H & R is that these two lists are identical. The "actual figures" concerning supplies used by the previous contractor were, in fact, provided to H & R. H & R's negligence argument is thus entirely unsupported.

H & R could argue, though it does not, that the estimates were nonetheless negligently prepared because Mr. Reimer did not consider the previous contractor's failure to provide adequate supplies. This argument, too, is flawed, for the same reason H & R's superior knowledge claim lacks merit: If the estimate was negligently prepared in any way, its shortcomings would have been revealed within the first twelve months of contract performance. This did not happen, and the estimate was thus well prepared. The Court should accordingly reject H & R's negligence argument and instead grant our motion for summary judgment.

## V. No Constructive Change Occurred Here

H & R next claims that it is entitled to compensation because a constructive change

occurred in its responsibilities under the contract. Pl. Mot. 17-22. We made a simple argument in our motion for summary judgment concerning H & R's constructive change claim: First, H & R cannot identify any work it performed beyond the scope of the contract, and, second, even if it could identify such work, it cannot identify anyone with contracting authority who directed it to perform such work. Def. Mot. 19. Nothing H & R offers in its response refutes this argument, and summary judgment on this count in the Government's favor is thus appropriate.

On the first point, H & R fails to identify any work it performed beyond the scope of the contract. The contract's scope of work broadly required H & R to "furnish all materials, supplies, and vehicles necessary to comply with the requirements of this contract." Def. App. 14. The contract also required H & R to perform various services on Tuesday and Friday, regardless of hours. Def. App. 15. H & R does not explain how the Government required it to do anything beyond these broad requirements.

On the second issue, H & R also fails to identify anyone with contracting authority who directed H & R to do anything beyond the scope of the contract. H & R instead makes careful use of the passive voice: "H & R was directed to provide additional supplies," and "H & R was also required to provide additional janitorial services." Pl. Mot. 19. This circumlocution is no accident. H & R's employees spoke at length during their depositions about who actually requested them to provide more supplies and services, and it was not the contracting officer. Def. App. 782-84; Def. App. 794. Instead, Jeannette Hairston, H & R's first-line supervisor, recalled weekly conversations with customers in the buildings she cleaned who would ask her to leave more supplies or provide more services, requests with which Ms. Hairston always complied. Def. App. 782-84. Ms. Hairston's supervisor, Mr. Monroe, recalled frequent

conversations with Pete Webb, the contract's inspector, about supply shortages. Def. App. 794. Mr. Monroe could not remember any conversations with the contracting officers, Mr. Dryz and Ms. Arkeketa-Rendon, about additional supplies or services. Def. App. 794. Indeed, no one with contracting authority ever directed H & R to perform work or provide supplies beyond the scope of the contract; to the extent that individuals lacking the requisite authority issued such directions, the Government is not bound by their instructions, which H & R followed at its own risk. See Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1260-61 (Fed. Cir. 2005); Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

H & R attempts to deduce that other modifications to the contract entered into by the contracting officer somehow mean that the contracting officer intended to compensate H & R for all of its costs. Pl. Mot. 19, 21. This argument makes no sense. All of the modifications identified by H & R concerned the addition and subtraction of square footage under the contract, or the alteration of service days. Plf. App. 764-65; 759-62; Def. App. 460-62, 395-97. The contract itself provided for such changes:

> 20. The Government reserves the right to add or delete buildings or portions of buildings, change days of service, and specify cleaning times in buildings as required to meet customer's [sic] schedules at no increase in the square foot price. The Contracting Officer will notify the Contractor telephonically as these changes occur. These changes will be confirmed by a modification to the contract at the end of each month.

Def. App. 15. H & R relies upon routine modifications to the contract, effected by the contracting officer, to support the notion that the plain terms of its contract were constructively changed by Government employees lacking any authority to make such a change. This argument is meritless. The contracting officer's modifications to H & R's contract did not free H & R to spend money freely under the contract on the assumption that the contract would later be

modified to account for its costs. In short, H & R's constructive change claim is meritless, and the Court should grant us summary judgment on this issue.

## VI. <u>H & R Is Not Entitled To Reformation Because Of Mutual Mistake</u>

As with H & R's other arguments, we addressed mutual mistake in our motion for summary judgment. Def. Mot. 21-22. Instead of responding to our arguments, H & R crafts an argument based upon the letter sent by the contracting officer to prospective bidders addressing changes in the contract from the previous contract. Pl. Mot. 22-23. H & R claims that this letter demonstrates that the parties were mistaken concerning "whether compensation would be paid for work in support of mobilization efforts." Pl. Mot. 23. This argument is entirely meritless. Beyond the plain omission of the mobilization clause from its contract, H & R offers no evidence that either party was mistaken about the clause. As an initial matter, we note that H & R does not identify any evidence that it reviewed the previous contract before being confounded by the contracting officer's letter. Regardless, that the contracting officer did not identify the clause in her letter is of no moment; the two contracts are vastly different in numerous respects not mentioned in the letter. Compare Plf. App. 785-899 with Plf. App. 1-32 (note that H & R's contract is about 85 pages shorter than the previous contract). H & R asks the Court to believe that it (1) scrutinized the previous contract, (2) read the solicitation upon which it was bidding, (3) read the contracting officer's letter, and (4) became confused. Maybe so, but that would be entirely unreasonable. H & R's short contract obviously does not contain the mobilization clause; only an unreasonable contractor would read the contracting officer's letter to imply that it did. As we established in our motion for summary judgment, H & R is thus not entitled to a reformation of its contract based upon mutual mistake.

## VII. H & R Has Not Presented Sufficient Evidence Concerning Its Second Claim

H & R claims that it does, in fact, have evidence to support its second claim, in contravention to our argument that H & R has failed to document the discrepancy between its invoices and the amount in its certified claim. H & R asserts that the difference can be explained by "fuel costs, pretty cash purchases for supplies from Sam's Wholesale, and equipment costs." Pl. Mot. 23. We made this argument because, as we noted, the supply costs in H & R's first claim correspond exactly with its supply invoices. Compare App. 496 with App. 504-11. H & R does not explain why the fuel costs, etc., that it identifies in support of its second claim were not also included in its first claim, which was for a much longer period — for its first claim, H & R stuck closely to its invoices. Instead, H & R asserts that it "may present oral evidence as to these additional damages in the event it is unable to locate the additional supporting documentation." Pl. Mot. 24.

H & R's promise to present evidence at some time in the future is insufficient to meet its burden under RCFC 56. To avoid summary judgment, H & R must present more than the "mere existence of a scintilla of evidence" in support of its position; it must present evidence upon which the Court could reasonably rule in its favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A "mere promise to produce admissible evidence at trial" is insufficient to avoid summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990). H & R's vague invocation of costs — none of which were accounted for in its first claim — is insufficient to support H & R's claim beyond the amount supported by invoices, or to create a genuine issue of material fact. Further, even if the Court were to find an issue of material fact concerning H & R's second claim, the Court should still grant summary judgment in our favor because H & R's interpretation of its contract is unreasonable.

## CONCLUSION

For the reasons given above and in our motion for summary judgment, the Court should grant our motion for summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Sean B. McNamara
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
CAPTAIN LISA M. SATTERFIELD
U.S. Army Litigation Division
901 North Stuart Street, Suite 437
Arlington, VA 22203

JOE ALFORD
Attorney-Advisor
Office of the Staff Judge Advocate
Taylor Hall (Building 462)
Fort Sill, OK 73503

February 28, 2008

CERTIFICATE OF FILING

I hereby certify that on this 28th day of February, 2008, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara